**In the Matter of Richard KORMAN, individually and trading as Penguin Cleaners, Bankrupt.**

**No. 25227.**

United States District Court
E. D. Pennsylvania.

March 25, 1959.

Miller, Adelman & Lavine, Philadelphia, Pa., for bankrupt.

Thomas J. Curtin, Philadelphia, Pa., for referee.

Herman Toll, Philadelphia, Pa., for objecting creditor.

Herman N. Silver, Philadelphia, Pa., for trustee.

GRIM, District Judge.

Albert Leven, a creditor, petitions for review of the Referee's order granting the bankrupt, Richard Korman, his discharge. The discharge is attacked on two grounds: that the bankrupt failed to keep and preserve adequate books and records, and that he failed to explain satisfactorily the losses of his assets.

194

On August 7, 1957, a constable came to the Penguin Cleaners place of business, distrained for rent, and put Korman out of possession.

On November 8, 1957, Korman filed a voluntary petition in bankruptcy, showing liabilities of $134,120.33 and no assets.

■ Section 14, sub. c of the Bankruptcy Act, 11 U.S.C.A. Sec. 32, sub. c, provides:

"(c) The court shall grant the discharge unless satisfied that the bankrupt has  *  *  *

"(2) destroyed, mutilated, falsified, concealed, or failed to keep or preserve books of account or records, from which his financial condition and business transactions might be ascertained, unless the court deems such acts or failure to have been justified under all the circumstances of the case; or  *  *  *

"(7) has failed to explain satisfactorily any losses of assets or deficiency of assets to meet his liabilities: *Provided,* That if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt."

The creditor filed objections to the discharge with the referee, who held hearings and granted the discharge, making findings that:

"The bankrupt kept and preserved books and records from which his business transactions and financial condition were ascertained," and that

"The bankrupt has accounted for the deficiency in his assets by his testimony of losses in the business of Penguin Cleaners, losses in the partnership of Kormar Homes and personal expenses, the majority of which were incurred

prior to the opening of the business of Penguin Cleaners."

A set of double-entry books had been set up for Penguin Cleaners by an accounting firm. The general journal, general ledger, and cash disbursements journal had entries up to the end of June, 1957, and the cash receipts journal up to the end of July, 1957. There were no entries in the accounts payable ledger and purchases journal after December 1956. There were check book stub entries to September 7, 1957.

Korman's other records consisted of tickets used on the clothing (which were removed from the clothing when it was delivered to the customer, and kept in boxes in the shop), cash register tapes, and two books showing cash disbursements. The tickets, tapes, and cash disbursements books remained in the shop when Korman was put out of possession, and are not in evidence.

Korman testified that he had mailed his cancelled checks and bank statements to the objecting creditor's attorney. They did not arrive. Photostatic copies of the bank statements were furnished to the objecting creditor's attorney. Photostatic copies of the checks, obtainable from the bank at a cost of 80 cents each, were not.

The objecting creditor's accountant testified on cross-examination:

"Q. And from those papers [the double-entry books and check book] you were able to ascertain the business transactions and the financial condition of the bankrupt?

"A. That's right."

In view of this testimony from his expert witness, it is obvious that the objecting creditor has not succeeded in carrying his burden of establishing a prima facie case with respect to the bankrupt's books and records. The referee's first finding of fact must be sustained.

■ At some time prior to 1956 Richard Korman, now the bankrupt, entered into a partnership with his brother-in-law, Richard Marx, under the name of

Kormar Homes. Korman left the partnership and on October 1, 1956, began a dry-cleaning business under the name of Penguin Cleaners. In order to establish and operate the cleaning business he obtained $33,000 from Kormar Homes, $7,000 from Roland Schragus, another brother-in-law, and $6,000 from Marx.

This being a no-asset case, there is no satisfactory explanation as to where this $46,000 went. The bankrupt's explanation is:

| | | |
|---|---|---|
| 1. | He lost in Kormar Homes about | $12,000 |
| 2. | He lost in Penguin Cleaners about | 13,000 |
| 3. | On the occasion of his marriage he spent for a ring | 3,000 |
| | for a fur jacket | 1,500 |
| | for a honeymoon in Europe | 4,000 |
| 4. | Living expenses, $200 a week less 90 days honeymoon 10/1/56 to 11/8/57 | 9,000 |
| | | $42,500 |

The explanation is unsatisfactory because of a lack of detail. Kormar Homes and Penguin Cleaners were separate businesses. Losses from Kormar Homes would not necessarily have drained assets from Penguin Cleaners. It can hardly be said that the $12,000 represents repayments on the Kormar Homes loan ,since Kormar Homes was scheduled as a creditor by the bankrupt for the $33,000 which he obtained from Kormar Homes. Also the honeymoon and living expenses, which were pretty high under the circumstances, are in such round figures as to make one a little dubious about their accuracy and validity. There should be some corroborative evidence in reference to them.

In the present state of the record the loss of the bankrupt's assets has not been satisfactorily explained. There is a reasonable doubt about the situation. However, there is enough evidence in the case to indicate that perhaps the losses can be explained satisfactorily.

The Referee's finding of fact that the bankrupt has accounted satisfactorily for the deficiency in his assets is clearly erroneous.

The order of the Referee granting the bankrupt his discharge is reversed, and the record is referred back to the Referee to permit the parties to submit further evidence as to the losses of the bankrupt, and thereupon to determine, on the basis of such further evidence and the evidence previously introduced, whether or not the bankrupt should be granted a discharge.