In re Isaac Elbert HALL, Louise Couch Hall, Debtors.

LINCOLN COUNTY BANK OF FAYETTEVILLE, Plaintiff,

v.

Isaac Elbert HALL, Louise Couch Hall, Defendants.

Bankruptcy No. 1–82–00828. Adv. No. 1–82–0687.

United States Bankruptcy Court, E.D. Tennessee.

Nov. 10, 1983.

R. Whitney Stevens, Jr., Stevens, Bagley & Stevens, Fayetteville, Tenn., for plaintiff.

Pat M. Fraley, Fayetteville, Tenn., for defendants.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

Lincoln County Bank brought this suit to deny the debtors a discharge in bankruptcy. In its complaint the bank alleges:

During October of 1981, and within one year of the date of the filing of the petition herein, the defendants transferred and conveyed certain contract rights unto Mr. Don Hall, the brother of the defendant, Isaac Elbert Hall, and cancelled obligations owing to the defendants by said brother for a nominal portion of the amount owed.

The proceeds received as said portion of the value of the total contract rights to which the defendants were entitled were placed in a banking institution outside of the state of Tennessee for the purpose of concealing same from the plaintiff, other creditors, and the Trustee in this case.

The defendants made the transfer of said contract rights and the cancellation of other obligations due them by Don Hall with the intent to hinder, delay, and defraud the defendants' creditors, including the plaintiff herein.

In the alternative, the defendants made the transfer or cancellation of said contract rights with the intent to hinder, delay and defraud the Trustee of the estate herein.

In the alternative, the defendants entered into an agreement with said brother, Don Hall, pursuant to which only a portion of the value of the contract rights would be received prior to filing of petition in Bankruptcy, which sum could be concealed from creditors and the Trustee in this case, and the balance of the value of the contract rights could be obtained by the defendants at a future date, all for the purpose of concealing the existence and value of the debtors' property from the plaintiff and/or the Trustee herein.

The discharge of the defendants should be denied under Section 727(a)(2).

Though Mrs. Hall is named as a defendant, the complaint did not allege that she committed any acts that would call for denial of her discharge and there was no proof of any such acts.

The bank relies on Bankruptcy Code § 727(a)(2), which provides:

(a) The court shall grant the debtor a discharge, unless—

. . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed . . . .

(A) property of the debtor, within one year before the date of the filing of the petition . . . .

The court finds the facts as follows.

In 1975, the debtor borrowed money from the plaintiff to buy a Western Auto Store. The debtor gave the plaintiff a second mortgage on his house to secure the debt. The house was worth considerably more than the first mortgage debt.

The debtor later gave the plaintiff a second security interest in the inventory, equipment, fixtures, and accounts receivable of the Western Auto Store. Western Auto held the first security interest. Payments on the debt to the plaintiff were due quarterly (four times per year).

No fraud is alleged in connection with the loan. From time to time the loan was renewed by a new note.

The Western Auto business was a failure. Plaintiff's brief and argument accused debtor of wrongfully retaining some inventory from the Western Auto store which was closed.

There is no proof that the debtor kept or disposed of the assets of the Western Auto store with intent to hinder, delay, or defraud a creditor, either the plaintiff or Western Auto. The debtor carried out an orderly liquidation of a failing business. Over a period of time the debtor simply sold out the inventory without restocking. He then sold the other assets. Anyone who ventured by the store could have seen that it was going out of business.

Before the debtor finally closed the Western Auto store in April of 1981, he started a television rental business. He continued this business up to the filing of his bankruptcy petition in April, 1982.

The complaint contains no allegations that debtor gave the bank a false financial statement upon which it relied. There was testimony, however, that the debtor in 1979 and 1980 gave the plaintiff-bank financial statements regarding an asset which he valued at $5,000.

The asset figures prominently in this dispute. The asset arose from a transaction which occurred a number of years earlier involving the debtor and other members of his family. They advanced the debtor's brother, Don Hall, money that he used to acquire an interest in a cable television service. They understood that they would have an interest in the company in return for the money.

In 1981 the debtor's brother sold his interest in the cable television service. On April 27, 1981, he entered into a settlement agreement with the debtor and other family members. Each was to receive $45,000 with interest paid in 48 quarterly installments of $2,140.03 each.

After receiving two installment payments the debtor started trying to sell his interest in the settlement contract or use it as collateral for another loan. The debtor's Western Auto store was closed. Other business ventures were not doing well. The debtor even consulted an attorney about the possibility of bankruptcy.

In October, 1981, debtor sold his interest under the settlement contract to his brother, Don Hall, for $22,500. The debtor did not deposit all of this money with the plaintiff-bank. His loan agreement with the bank provided:

In the event of Default, the Lender may (when and where legally permissible), without demand or notice of any kind, set-off all or any portion of this Note against any balances, credits, deposits, accounts, monies or other property of the Borrower at any time held by the Lender.

The debtor deposited $17,500 of the money to a new account at First Alabama Bank, of Huntsville, Alabama, where he had no debts and the bank had no right of set-off. He deposited $4,800 of the money to his account with the plaintiff-bank. On November 2, 1981, the debtor withdrew $2,000

from the new account and deposited another $1,800 to his account with plaintiff-bank.

The note to plaintiff-bank was due on November 4, 1981. The debtor wrote a check on his account with the plaintiff and paid plaintiff $3,289.31. He renewed the balance.

The debtor testified that he used the account with First Alabama Bank to operate the television rental business, to pay creditors, and to pay living expenses. The debtor used all of the money in the account.

He filed his petition in bankruptcy on April 19, 1982.

### Discussion

The settlement agreement came about long after the loan to debtor. The debtor's failure to reveal the settlement agreement to the bank under the facts of this case, would not be a violation of 11 U.S.C. § 727(a)(2).

The real issue in this case is whether the debtor sold his contract rights with intent to hinder, delay, or defraud a creditor. It appears that after business failures the debtor considered filing bankruptcy. No doubt his attorney advised the debtors of their exemption rights, but it must have been apparent that they would lose their home and a portion of the settlement.

The debtor then decided to sell his contract rights and use the money in his television rental business or some other business ventures in the hope that he could make enough money to support his family and pay his debts.

The debtor approached Peoples Bank of Elk Valley in Fayetteville, Tennessee, a Winchester bank, and several individuals regarding the purchase of his contract rights. Being unable to find another buyer, the debtor sold his contract rights to his brother for $22,500. The debtor had serious financial problems and this was as good a deal as he could make; but the bank questions the amount the debtor received.

The last paragraph of the contract with his brother provides:

The parties hereto do recognize that there are some slight contingencies and liabilities on the part of the Party of the First Part to the purchasers of the Franklin County, Tennessee CATV, Inc. These contingencies and liabilities could possibly result in a reduction in the amount of the future installments due to the Party of the First Part for the sale of his interest in the cable system. If the amount of the future installments due to the Party of the First Part is reduced by litigation or otherwise, then his obligation to the Parties of the Second Part under the terms of this agreement shall be reduced proportionately.

There was no evidence of fraud or collusion in the sale to his brother.

From the entire record the court finds that the debtor did not sell his contract rights to his brother with intent to hinder, delay, or defraud a creditor. The debtor simply decided that the best course of action was to use the settlement agreement to raise new business capital. This decision may have been unwise, but the court finds that debtor had no fraudulent intent.

The plaintiff-bank further complains that debtor put his settlement money in another bank. Of the $22,500 settlement, at least $6,600 ended up on deposit in the plaintiff-bank. It is the plaintiff's contention that debtor intended to defraud it by putting money in the other bank.

Debtors in financial difficulty commonly try to keep assets for living expenses and as business capital in the hope that they may still succeed. A debtor may begin dealing in cash or at least deposit his money in banks that are not also creditors, since a deposit to a creditor bank might be set-off immediately. The statute must be narrowly construed lest most debtors be denied a discharge for concealing or transferring property with the intent to hinder or delay creditors. The degree of intent and the degree of hindrance or delay make a difference.

The failure to deposit money to an account with a creditor bank delays the creditor from collecting, since it could oth-

erwise set off the deposit. On the other hand, the statute does not require that a debtor always turn his money over to a creditor immediately in order to receive a discharge.

If the debtor not only fails to deposit the money with a creditor bank but also keeps the cash and hides it away, the bank is even more delayed and the debtor's intent is clearer. The debtor in this case did not keep the cash. He opened an account with a nearby bank that was not a creditor. The account was active from the time of the deposit until the debtor's bankruptcy six months later. The plaintiff apparently did not try to collect its debt during this time or even ask the debtor if he had bank accounts elsewhere. If it had, it might have found the account, which could have been attached almost as easily as an account in a local bank.

Though it is clear the debtor intended to keep the money from the plaintiff's immediate possession, there was no showing that he did not intend to pay the plaintiff. The money was the capital on which he hoped to make a new, more successful start. The debtor tried for six months before he finally gave up. The debtor may have made bad investments. However, had he succeeded in business, he would have been able to pay his creditors.

This is a troublesome case. See *Elliott v. Herrera,* 401 F.2d 174 (9th Cir.1968). The court, however, hesitates to deny a discharge to a debtor whose overall intentions were not clearly fraudulent.

The party seeking to deny discharge has the burden of proof. The proof must be clear and convincing. *In re Barlick,* 1 B.C.D. 412 (Bkrtcy.R.I.1974); *In re Russell,* 18 B.R. 325 (Bkrtcy.E.D.Pa.1982); *In re Lowinger,* 19 B.R. 853 (Bkrtcy.S.D.Fla. 1982); *In re Klein,* 20 B.R. 119 (Bkrtcy.E.D. Pa.1982); *In re Forester,* 28 B.R. 249 (Bkrtcy.W.D.Mo.1983).

Considering the remedial purpose of the bankruptcy laws, objections to discharge are strictly construed, and evidence is to be viewed in a light most favorable to the debtor.

Bankruptcy Rule 407 (in effect at the time of the hearing) provides that, at the trial on a complaint objecting to discharge, the plaintiff has the burden of proving the facts essential to his objection. In the case before this court the plaintiff has not carried that burden. The objections to discharge will be overruled. The discharge will be granted.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.