In re Sidney M. BERNSTEIN, Debtor.

Sidney M. BERNSTEIN,
Defendant/Appellant,

v.

CARL ZEISS, INC., Plaintiff/Appellee.

No. 86–6906–Civ.
Adv. No. 86–0124–BKC–AJC–A.

United States District Court,
S.D. Florida,
Miami Division.

Aug. 13, 1987.

Samuel L. Heller, Miami, Fla., for Sidney M. Bernstein, defendant/appellant.

Leroy F. Culton, Miami, Fla., for Carl Zeiss, Inc., plaintiff/appellee.

## MEMORANDUM OPINION AND FINAL ORDER REVERSING BANKRUPTCY COURT DECISION

ARONOVITZ, District Judge.

This matter is before the Court on appeal from an Order of the United States Bankruptcy Court of the Southern District of Florida dated July 11, 1986 in which the bankruptcy court denied the Debtor discharge pursuant to 11 U.S.C. Section 727(a)(5).

### BACKGROUND

Debtor/Appellant Sidney M. Bernstein (hereinafter "Debtor") was the President and principal stockholder of a closely held corporation called Sci–Medi Corporation (hereinafter "Sci–Medi"). In March of 1981, Sci–Medi entered into a dealership agreement with Appellee Carl Zeiss, Inc. (hereinafter "Zeiss") which permitted Sci–Medi to sell certain medical and scientific equipment manufactured by Zeiss. Also in March of 1981, Sci–Medi, together with the Debtor personally, entered into a purchase and sale agreement with Zeiss whereby the Debtor and Sci–Medi agreed to pay Zeiss $321,000 for a former dealer's existing equipment inventory and accounts receivables. In conjunction with this transaction, Zeiss duly recorded a security agreement which granted Zeiss a lien on all current and future inventory, receivables, and the proceeds of same.[1]

The purchase agreement between the parties is ambiguous as to when payments on principal were to commence. The agreement provides:

---

1. Unlike the purchase agreement, the Debtor, individually, was not a party or signatory to the security agreement.

The Buyer agrees to pay to the Company the sum of $321,000.00 with interest commencing 91 days from the date of this agreement at the rate of 1% per month on the unpaid balance with respect to $130,000 + 181 days at the rate of 1% per month on balance + $191,000.00.

Purchase Agreement, p. 2, paragraph 5.

Bernstein testified at trial, which testimony was undisputed, that the parties had an understanding not evidenced by the purchase agreement that payments on the principal were not to commence until three years after the purchase of the business, presumably to give the Debtor an opportunity to establish the business.[2]

The security agreement entered into between Zeiss and Sci–Medi did not specifically provide that any monies collected on accounts receivables by Debtor and/or Sci–Medi be segregated from other monies of the business or placed in escrow. Instead, the agreement provided:

> Until notice in writing from the Secured Party of the revocation of the Dealer's authority, the Dealer will, as Agent of the Secured Party, at the Dealer's own cost and expense and subject to any time or times to the Secured Party's right to direct and control (*it being understood that in the absence of specific instructions the Dealer is to use its best judgment as the Secured Party's agent to protect the Secured Party's interest*):
> A. Endeavor to collect or cause to be collected from Customers indebted on Accounts, as and when due, any and all amounts, including interest, owing under or on account of each Account....

Inventory and Accounts Receivable Security Agreement, pp. 3–4, paragraph 3 (emphasis added).

During the period from March of 1981, when the security agreement was executed, and July of 1983, the Debtor received approximately $200,000 from Sci–Medi as short-term personal loans from the corporation. Of this money, the Debtor testified at trial that he invested approximately $175,000 in a newly formed company called Zoya Corporation (hereinafter "Zoya"), of which the Debtor was President, and spent the other $25,000 on miscellaneous personal expenses.

Zoya was established by the Debtor for the purpose of manufacturing a patented orthopedic knee therapy device. The Debtor produced at trial evidence of Zoya's failure as a business enterprise and, thus, the loss of the $175,000 he invested therein.

In July of 1983, Zeiss terminated its dealership agreement with Debtor and Sci–Medi and thereafter commenced an action in state court to recover monies due under the agreement. That action was ultimately resolved by way of settlement and the Court entered final judgment on the parties' settlement agreement on April 13, 1984. The Debtor breached the settlement agreement by failing to make payments thereunder and, in accordance with the terms of the settlement agreement, the Court entered an Amended Final Judgment in favor of Zeiss and against the Debtor in the amount of $496,570.74 on February 19, 1985.

On November 15, 1985, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. On February 25, 1986, Zeiss filed a three count complaint objecting to the Debtor's discharge under:

(1) 11 U.S.C. Section 727(a)(3) for falsification of records;

(2) 11 U.S.C. Section 727(a)(5) for failure to explain satisfactorily, before determination of denial of discharge, a loss of assets to meet his liabilities,

and excepting to the Debtor's discharge under:

(3) 11 U.S.C. Section 523(a)(2)(A) for obtaining money or property through false pretenses.

Zeiss alleged that the loans obtained by the Debtor from Sci–Medi were misappropriations by the Debtor of proceeds of payments made to Sci–Medi by its customers, and therefore, subject to the security interest held by Zeiss.

---

**2.** Apparently, this understanding was agreed to between Debtor and Zeiss's Vice President in charge of Finance, Mr. Henry Winters, who did not testify at trial.

At the close of Plaintiff Zeiss's case at trial, Judge Cristol dismissed Counts I and III of this adversary proceeding, namely, falsification of records (11 U.S.C. Section 727(a)(3)) and obtaining money or property through false pretenses (11 U.S.C. Section 523(a)(2)(A)). At that point, all that remained for determination was Count II, failure to satisfactorily explain a loss of assets to meet liabilities (11 U.S.C. Section 727(a)(5)).[3]

Judge Cristol determined that Sci–Medi was merely the alter-ego of the Debtor and, based solely on this one provision of the Bankruptcy Code, denied discharge, stating:

> In view of the circumstances, the explanation that I [Bernstein] took the money that was pledged under security instrument to a creditor and went out and took the risk with it and lost is not a satisfactory explanation of why the money isn't there to pay the secured debt.
>
> In view of this determination, the court denies discharge pursuant to 727(a)(5). The Court points out that it also would have denied discharge on the breach of the fiduciary duties under five—dischargeability under 523(b)(4) [sic] had that section been appropriately pled.

Trial Transcript, pp. 141–42.

## DISCUSSION

Section 727 of the Bankruptcy Code provides that a debtor shall be granted a discharge unless one or more of the ten specifically enumerated reasons for denial is proven. 11 U.S.C. Section 727(a)(1)–(10). Among the more frequently invoked of these grounds are the fraudulent transfer of assets, fraudulent concealment of assets or information, failure to keep adequate books and records, the making of false statements in connection with the case, and failure to cooperate with the court. *See* 4 W. Collier, *Collier on Bankruptcy,* ¶ 727.-01A (15th ed. 1985) and cases cited therein.

■ Generally, a Chapter 7 debtor's conduct, no matter how reprehensible, will not forfeit discharge unless covered by one of the grounds listed in Section 727. *Matter of Ksenzowski,* 56 B.R. 819 (Bkrtcy.E. D.N.Y.1985). As the debtor's fresh start is one of the primary purposes of bankruptcy law, exceptions to discharge must be strictly construed. *In re Cohen,* 47 B.R. 871 (Bkrtcy.S.D.Fla.1985).

■ Under 11 U.S.C. Section 727(a)(5), the Court must grant a discharge unless the debtor has failed to satisfactorily explain any deficiency of assets to meet the debtor's liabilities.[4] It is designed to compel an explanation of a loss or deficiency of assets as a prerequisite to a discharge. In order to establish a claim under this Section, the burden is on the plaintiff to establish that the debtor at one time owned a substantial identifiable asset, not too remote in time to the date of the commencement of the case; that on the date of filing the voluntary petition the debtor no longer had the particular asset, and when called upon to explain its disposition, he was unable to furnish a satisfactory explanation. *Matter of Hyers,* 70 B.R. 764 (Bkrtcy.M.D. Fla.1987) (Chapter 7). Although Section 727(a)(5) places a burden of production upon the debtor or face denial of discharge, it is the law of this Circuit that the ultimate burden of persuasion on the issue remains at all times with the objecting party. *In re Oesterle,* 651 F.2d 401, 404 (5th Cir. Unit B 1981), *reh'g denied* 660 F.2d 499 (1981), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2268, 73 L.Ed.2d 1283 (1982) (holding no abuse of discretion in granting discharge where objecting party offered no evidence of the inadequacy of the explanation).

---

**3.** Judge Cristol also denied a motion to amend the complaint to conform to the evidence to add a count for failure to keep or preserve records (11 U.S.C. Section 727(a)(3), stating that the evidence was insufficient to deny discharge on that basis. See footnote 7 *infra.*

**4.** Section 727(a)(5) appeared in the former Bankruptcy Act as Section 14(c)(7) [11 U.S.C. Section 32(c)(7) (1976) (repealed)]. Because the two Sections are identical, the Court has cited various cases herein construing Section 14(c)(7) as an aid to construing Section 727(a)(5).

Most of the cases discussing Section 727(a)(5) involve situations where the debtor is unable to explain, in a business-like manner, corroborated with other evidence, where the asset went. *See, e.g., Matter of Reed,* 700 F.2d 986, 992 (5th Cir.1983) ("[T]he debtor cannot prevail [in a discharge proceeding] if he fails to offer credible evidence after the creditor makes a prima facie case."); *In re Glaser,* 49 B.R. 1015 (S.D.N.Y.1985) (holding that a satisfactory explanation must consist of more than the vague, indefinite, and uncorroborated hodgepodge of financial transactions); *Lowe's of Virginia, Inc. v. Thomas,* 60 B.R. 418 (W.D.Va.1986) (discharge denied where explanation of how funds were disbursed was indefinite and inconsistent); *In re Cohen,* 47 B.R. 871 (Bkrtcy.S.D.Fla. 1985) (standard by which explanation is measured is one of reasonableness or credibility). The creditor is aware of a substantial asset which has suddenly vanished. If the debtor cannot account for the disappearance to the Court's satisfaction, it is presumed that the asset has been purposefully secreted or concealed to defeat creditors, and a discharge will be denied. The question is, of course, what is meant by a "satisfactory" explanation.

One often-cited court, approved in this Circuit, has explained that a satisfactory explanation in this regard is, for the most part, one which is credible or believable—one that does not arouse suspicion that the facts are other than those presented by the debtor:

> The word 'satisfactorily' ... may mean reasonable, or it may mean that the court, after having heard the excuse, the explanation, has that mental attitude which finds contentment in saying that he believes the explanation—he believes what the bankrupts say with reference to the disappearance or the shortage. He is satisfied. He no longer wonders. He is content.

*In re Shapiro & Cornish,* 37 F.2d 403 (N.D.Tex.1929), *aff'd sub nom. Shapiro & Ornish v. Holliday,* 37 F.2d 407 (5th Cir. 1930).

In this case, however, the $200,000 personal loans from Sci–Medi to the Debtor which are no longer part of the Debtor's estate is not a "loss or deficiency" of asset in the sense of a disappearance which would require an explanation. The Debtor's credibility has not been placed in issue. All parties and Judge Cristol are in agreement that the bulk of the personal loans were lost in a separate failed business venture and that the remainder was spent on miscellaneous personal expenses. The evidence was unrefuted as to where the money went. In terms of credibility, the debtor's explanation was satisfactory.

Judge Cristol did not take issue with the Debtor's explanation because it was shoddily presented or because it was unreasonable, at least in terms of credibility, but was instead concerned with the conduct which the Debtor's explanation revealed. This appeal, then, presents the issue of the type of conduct which would require the denial of discharge when revealed by a credible explanation under Section 727(a)(5).

The Debtor argues herein that all that is required under Section 727(a)(5) is a believable explanation and nothing more. According to the Debtor, as long as the debtor comes forward and tells the truth, whatever that truth may be, the court is without discretion to deny a discharge. However, as Judge Cristol observed:

> The Court thinks it's a fantastic concept that if you document wrongdoing, it's okay. By that extension of thinking, if an embezzler takes money and writes a note for it as it's taken, it would make it okay? That's not my understanding of the law.

Trial Transcript, pp. 139–40. This Court agrees that candor and truthfulness, virtuous as that may be, cannot shield the bankrupt from any and all wrongful conduct and for that reason, the Court considers the interpretation of "satisfactory" urged by the Appellant as too narrow.

On the other end of the spectrum, Zeiss argues that "general equitable principles of good faith, honesty and fair dealing" should govern the bankruptcy court's deci-

sion to discharge in the face of a credible explanation. If this interpretation were adopted, a bankruptcy court could deny discharge based on purely subjective reasons. It is clear that whatever "satisfactory" means, it must entail an objective standard, not subject to arbitrary application or the whim of a bankruptcy court. *See, e.g.,* Cowans, *Bankruptcy Law and Practice,* Section 5.43 (1986):

> It should be stressed that satisfactory is somewhat an objective rather than subjective test in the sense that the court may be convinced of the truth of the debtor's explanation of what happened to his assets and not the wisdom of the expenditures or dispositions. The court is not to sit in moral judgment.... It would be ludicrous to create a system which denies relief to those who are the victims of their own lack of wisdom or judgment.

That "satisfactory" is not meant to be measured by a subjective standard is supported by various cases in which the court accepted the debtor's explanation that assets were expended on gambling ventures and extravagant living. *See McBee v. Sliman,* 512 F.2d 504 (5th Cir.1975); *Minella v. Phillips,* 245 F.2d 687 (5th Cir.1957); *In re Korman,* 172 F.Supp. 193 (E.D.Pa.1959); *In re Weismann,* 1 F.Supp. 723 (S.D.N.Y. 1932). Likewise, it has been held that the burden is on the objecting party to show more than that the debtor exercised poor business judgment. *In re Hall,* 34 B.R. 584 (Bkrtcy.E.D.Tenn.1983). To hold otherwise could result in the denial of discharge based on the very fact of bankruptcy itself. For these reasons, the Court rejects Zeiss's broad interpretation of "satisfactory."

At first glance, Section 727(a)(5) appears to somewhat duplicate Sections 727(a)(1), concealment of property, and 727(a)(4), failure to keep or destroy documents. One commentator has suggested that 727(a)(5) is meant to apply where none of the other exceptions to discharge quite fits. 34 Journal Nat. Ass'n Referees in Bankruptcy, April 1960, at 54, *cited in* Herzog, *Failure to Satisfactorily Explain Loss of Assets or Deficiency of Assets to Meet Liabilities (Bankruptcy Act, Sec. 14c(7)),* 40 Journal Nat. Ass'n Referees in Bankruptcy, October 1960, at 100 n. 2. As a matter of statutory interpretation, it defies logic to assume that Congress either meant to duplicate some of the other exceptions contained in Section 727 or, alternatively, to provide a "catch-all"—"words which imply a legislative predilection to bar a discharge, if not on one ground, then on another." *Id.* at 100. As stated earlier, determinations of discharge are weighted in favor of the debtor in keeping with the spirit of the bankruptcy laws.

The better interpretation is that while Section 727(a)(5) provides an independent basis for denying discharge, the wrongful conduct it is meant to reach must be limited to that proscribed by Section 727 itself.[5] In this way, a creditor who is suspicious about the disappearance of an asset, may utilize Section 727(a)(5) to compel the debtor to account for same. If the debtor's explanation is not credible, then a rebuttable presumption of an intent to conceal assets or otherwise defeat creditors is prima facie established. If, on the other hand, the debtor's explanation is credible, a discharge must be granted unless the explanation reveals conduct which is otherwise prohibited by Section 727.

■■■ The creditor at that point would not be required to amend his pleadings to conform with the evidence—a discharge could be denied based solely on Section 727(a)(5). A request for a *general* discharge under Section 727(a)(5) may not, however, be used as a fishing expedition to uncover conduct which could be the basis for a *particular* debt's exception to discharge under another section of the Bankruptcy Code (although a bankruptcy court could, of course, within its discretion, entertain a motion to amend the pleadings to conform with the evidence to allege wrong-

---

**5.** *Accord Shelby v. Texas Improvement Loan Co.,* 280 F.2d 349, 355 (5th Cir.1960) ("A bankrupt is not to be denied a discharge on general equitable considerations. *It can only be denied if one or more of the statutory grounds of objection are proved.*") (emphasis added).

doing proscribed by a different section of the Code).[6]

 Applying this interpretation to the facts of this case, the only provisions of Section 727(a) which could arguably apply would be subsection (2), transferring property with intent to hinder, delay or defraud a creditor within one year before the date of the filing of the petition or subsection (3) concealing, destroying, or falsifying books and records. Subsection (3) was pled by Zeiss and dismissed at the close of Plaintiff's case by Judge Cristol.[7] As to subsection (2), even assuming that the acts complained of could rise to the level of intent required to prove fraud, the Debtor obtained the loans from Sci–Medi and lost the money in Zoya more than two years prior to his filing bankruptcy. Section 727(a)(2)(A) is not meant to reach all bad acts occurring prior to bankruptcy, only those occurring within the one-year limitation.

Because the events in question occurred too remote in time to fall within the ambit of Section 727(a)(2)(A) and in view of the fact that plaintiff has not sustained its burden[8] of establishing by clear and convincing evidence that the conduct revealed by the debtor's explanation is non-dischargeable under any of the exceptions contained in Section 727(a),[9] Judge Cristol's finding that debtor is not entitled to a discharge under Section 727(a)(5) is, therefore, *clearly erroneous.* Accordingly, it is

ORDERED AND ADJUDGED that the Order of the Bankruptcy Court of July 11, 1986 is hereby REVERSED and that the Complaint for Denial of Discharge be and the same is hereby DISMISSED.

6. Although Judge Cristol indicated during the course of trial (Trial Transcript, p. 105) that sufficient evidence existed to grant an exception to discharge as to the debt owed Zeiss by the Debtor under Section 523(a)(4), breach of fiduciary duty, no motion to amend the pleadings was made. Of course, in this case, the Debtor's alleged wrongful acts did not come as a surprise to Zeiss during the course of trial but were in fact alleged within the Adversary Complaint. In any event, it is unlikely under the facts of this case, that a fiduciary relationship existed within the meaning of the Bankruptcy Code, even if one were to construe the agreements as establishing a lien over the proceeds at the time the subject loans were made. *See, e.g., Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1984); *In re Reder,* 60 B.R. 529 (Bkrtcy.D.Minn.1986) (holding that a fiduciary relationship exists under Section 523(a)(4) only where there is an express and formal trust established between the parties). Thus, the claim of fiduciary relationship must arise ab initio from ex contractu, that is, by contract, and not ex malifico, that is, as a result of an alleged wrongdoing. Breach of a commercial transaction does not by itself establish a fiduciary relationship. *See Angelle v. Reed,* 610 F.2d 1335 (5th Cir.1980) (construing Section 523(a)(4)'s predecessor) ("The act speaks of technical trusts, and not those which the law implies from the contract. A factor is not, therefore, within

the act."). As previously noted, the contracts herein do not require the segregation of any funds received. *See also In re Scarbaci,* 34 B.R. 344 (Bkrtcy.S.D.Fla.1983) (dismissing objections to discharge under Sections 727 and 523 where sale of goods subject to security agreement was result of debtor's misunderstanding of agreement's prohibitions).

7. Apparently, through the inadvertence of the Clerk's office, an Order of Discharge was issued in favor of the Debtor before the expiration of the time period in which objections thereto must be made. The Debtor testified that upon receipt of that premature Order, he discarded many of the documents which would have corroborated his testimony herein. Under the circumstances, Judge Cristol could find no fault with the Debtor in this regard.

8. *In re Oesterle,* 651 F.2d 401 (5th Cir. Unit B 1981), *reh'g denied,* 660 F.2d 499 (1981), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2268, 73 L.Ed.2d 1283 (1982).

9. Because the Court limits application of Section 727(a)(5) to those wrongful acts proscribed within Section 727, the Court need not and does not reach the question of whether the acts complained of herein would constitute a misdemeanor under *Fla. Stat.* Section 818.01.