**In re Marion E. PEDIGO, Debtor.**

**Debbie Green MOORE, as Personal Representative of the Estate of Twanna LaShon Green, a deceased minor, and as a surviving parent of Twanna LaShon Green, Plaintiff,**

v.

**Marion E. PEDIGO, Defendant.**

**Larry ′S. HYMAN, Trustee, Plaintiff,**

v.

**Marion E. PEDIGO, Defendant.**

**Bankruptcy No. 88–7947–8P7.**
**Adv. Nos. 89–175, 89–134.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 28, 1989.

Randolph A. Fabal, Addison, Ketchey & Horan, P.A., Tampa, Fla., for Larry S. Hyman, trustee.

Richard C. Prosser, Tampa, Fla., for Debbie Green Moore.

Thomas C. Little, Thomas C. Little, P.A., Clearwater, Fla., for Marion E. Pedigo.

## FINDINGS OF FACTS, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 7 liquidation case and the matters under consideration are two challenges to the discharge of Marion E. Pedigo (Debtor). The first is presented by a Complaint filed by Debbie Green Moore (Moore), as personal representative of the estate of Twanna LaShon Green, a deceased minor, and as a surviving parent of Twanna LaShon Green in Adversary Proceeding No. 89–175. In her three-count Complaint Moore contends that the Debtor should be denied a discharge pursuant to § 727(a)(2), § 727(a)(3), and § 727(a)(4) of the Bankruptcy Code. In Count I, Moore alleges that within one year of the commencement of the Bankruptcy case, the Debtor transferred several parcels of real property and assigned certain mortgages receivable with the specific intent to hinder or delay creditors. Based on the foregoing, Moore asserts that the Debtor is not entitled to a general bankruptcy discharge by virtue of § 727(a)(2) of the Bankruptcy Code.

In Count II, Moore argues that the Debtor has concealed, destroyed, mutilated, falsified, or failed to keep books and records from which the Debtor's financial condition or business transactions might be ascertained and, therefore, he is not entitled to a discharge by virtue of § 727(a)(3). Count III of Moore's Complaint states that the Debtor knowingly and fraudulently made a false oath in or in connection with the

Bankruptcy case by failing to disclose the transfer of assets and by failing to disclose income. As a result, Moore maintains that the Debtor should be denied a discharge pursuant to § 727(a)(4) of the Bankruptcy Code.

The second Complaint is brought by Larry S. Hyman, the duly appointed and acting Trustee for the estate of the Debtor. In his two-count Complaint, the Trustee seeks a denial of the discharge pursuant to § 727 of the Bankruptcy Code. In Count I, the Trustee states that the Debtor has transferred real property with the intent to hinder, delay, or defraud creditors or the Trustee and that the Debtor should, therefore, be denied a discharge pursuant to § 727(a)(2) of the Bankruptcy Code. In Count II of the Trustee's Complaint, he alleges that the Debtor, under penalty of perjury, failed to disclose transfers of property on his statement of financial affairs and, therefore, made a false oath in the Bankruptcy Case. As a result, the Trustee seeks a denial of the discharge of the Debtor pursuant to § 727(a)(4).

At the conclusion of the pretrial conference, the parties agreed that the adversary proceedings would be consolidated for trial and that the evidence presented at that time would resolve all issues raised by the Complaints of the Trustee and Moore. The facts established at the final evidentiary hearing which are relevant to the disposition of these matters are as follows:

The Debtor, who is now divorced, was married to Hazel M. Pedigo for more than twenty-five years. The Debtor during the marriage acquired several parcels of real property located in the southside of St. Petersburg. While these properties were acquired allegedly as rental property, it is the Debtor's contention they were not very rentable, and that he did not receive any meaningful income from the properties. The Debtor at this time is a handyman and in general earns his living as an independent contractor repairing residential properties.

On January 23, 1988, the Debtor, via a quit-claim deed, conveyed all his right, title and interest in 685 30th Avenue South, St. Petersburg, Florida, to his then wife, Hazel M. Pedigo. The deed indicated on its face that it was recorded in the public records of Pinellas County on March 30, 1988 (Plaintiff's Exh. No. 11). In addition, the Debtor deeded his right, title and interest in other real property located in St. Petersburg to his then wife. This deed stated on its face that it was executed on January 23, 1983, and was notarized on March 23, 1983. However, the notary's stamp indicates that the notary's commission, which is valid for four years, was to expire on October 9, 1991. This deed, even though executed in 1983, was not recorded until March 25, 1988 (Plaintiff's Exh. No. 3). The Debtor also executed a quitclaim deed on the same day, January 23, 1983, conveying by a quitclaim deed all his right, title and interest in certain adjoining property to his then wife. This deed, just like the previous one, was purportedly executed on January 23, 1983, and was purportedly notarized the 26th day of January, 1983, again notwithstanding the fact that the stamp of the notary indicates that the notary's commission was to expire on October 9, 1991 (Plaintiff's Exh. No. 4). The Debtor also executed, again on July 10, 1987, a quitclaim deed conveying to his then wife real property. This deed, like the others, is notarized, by the same notary allegedly on the 15th day of July, 1987, even though the commission of the notary would expire on October 9, 1991. It is noteworthy that the deed again was recorded on the same date as the others, March 25, 1988 (Plaintiff's Exh. No. 7).

On November 15, 1987, the Debtor also conveyed his interest in real property by way of a quitclaim deed to his then wife. This deed indicates on its face it was executed on November 15, 1987, but was not recorded until March 25, 1988.

The Debtor also assigned a certain mortgage note receivable due from by Denver J. Stutler and Stuart Arnold, III, on June 10, 1987, to his then wife. This assignment, unlike the other deeds, was recorded on November 10, 1988, the date the document was notarized. The Debtor assigned another mortgage note executed by Henry E. Turner and Ruby Lee Turner to his exwife. This assignment bears an exe-

cution date of November 20, 1987, and was also recorded on March 25, 1988, in the public records of Pinellas County. It should be noted in this connection that, while the Debtor professed to have no legal knowledge in real estate transactions, all the documents recited earlier were prepared by him, with the exception of the one assignment of mortgage which was prepared by an attorney.

In 1985, the Debtor was the owner and operator of an apartment house which was destroyed by fire and, as a result of the fire, an infant known as Twanna LaShon Green was killed. The estate of Twanna Green sued the Debtor in the Circuit Court in and for Pinellas County and sought to recover damages. On July 19, 1988, the Circuit Court, based on a jury verdict, awarded a money judgment in the principal amount of $450,000 against the Debtor which, after being credited with a payment made by the co-Defendant, still represents an outstanding liability of $444,500.

On December 29, 1988, the Debtor filed his Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code. In connection with this Petition, the Debtor also filed his Statement of Financial Affairs. The Schedule of Liabilities filed by the Debtor indicates one secured creditor, the Debtor's son, who allegedly obtained a mortgage on the Debtor's residence; an unsecured obligation to Sears, Roebuck in the amount of $2,300; and the judgment rendered by the Circuit Court rendered in favor of Twanna LaShon Green, scheduled to be in the amount of $444,500. The only other claim scheduled is a contingent liability to the Bank of Boston which relates to a mortgage of one of the properties which was transferred by the Debtor to his then wife.

In response to Question No. 12, of the Statement of Financial Affairs which required the Debtor to disclose transfers of any kind, absolute or otherwise, of all types of properties, real or personal, during the period immediately preceding the filing of the Petition, the Debtor denied having transferred any properties within the time period indicated by the question. In response to Question 9(b), which required the Debtor to reveal any assignment of any property for the benefit of creditors or any general settlement with creditors within one year, the Debtor answered, "Hazel M. Pedigo" and below stated, "Terms—Divorce Settlement, Pinellas County Circuit Court, Case No. 88–607917".

It appears that the Debtor filed a Petition for Dissolution of Marriage in Pinellas County. While the Debtor was represented by counsel, his wife, Hazel M. Pedigo, was not. On May 31, 1988, the Circuit Court entered a Final Judgment of Dissolution of Marriage which made no provision for alimony or for any property settlement except by reference to the fact that the parties amicably divided their separate real and personal properties accumulated by them during their marriage. At the duly scheduled and held meeting of creditors pursuant to § 341, the Debtor denied again under oath that he had transferred any properties within one year preceding the filing of the bankruptcy.

There is nothing in this record to indicate that the Debtor received any consideration of any sort for any of these conveyances and transfers and the transfers described earlier effectively denied the Debtor of all holdings with the exception of one piece of property which he claims to be his homestead, which has been claimed and allowed as exempt from administration.

The claim of the Trustee is based on § 727(a)(2) and contends that all these transfers were made within one year of filing of the bankruptcy petition with the specific intent to hinder or delay creditors, or in the alternative, that the Debtor made a false oath in bankruptcy in that he failed to disclose under penalty of perjury on his Statement of Affairs the transfers described earlier.

The claim of Moore is based on § 727(a)(2) alleging that the transfers described earlier were done with the specific intent to transfer the properties described earlier with the specific intent to hinder or delay or defraud creditors. In the alternative, Moore's claim is based on § 727(a)(3), charging that the Debtor had failed to keep books and records from which his financial condition could be ascertained and/or § 727(a)(4) that the Debtor committed a

false oath in bankruptcy by failing to disclose the transfers described earlier and by failing to disclose income and other assets received.

■ Under § 727 of the Bankruptcy Code, the burden is on the objecting party to prove that the debtor should be denied his discharge by clear and convincing evidence. Bankruptcy Rule 4005. *In re Bernstein*, 78 B.R. 619 (Bankr.S.D.Fla. 1987). Further, § 727 must be construed liberally in favor of the debtor and strictly against the creditor. *In re Greenwalt*, 48 B.R. 804 (Bankr.Colo.1985).

■ Under § 727(a)(2)(A), the creditor objecting to discharge bears the burden of proving that the debtor has fraudulently transferred property with the intent to hinder, delay or defraud creditors within one year before filing a petition for bankruptcy. *In re Chalik*, 748 F.2d 616 (11th Cir. 1984). The law is well settled that the intent must be actual fraudulent intent. *See 4 Collier on Bankruptcy: § 727.02[3] (15th Ed.1984), Cycle Accounting Services*, 43 B.R. 264 (Bankr.Tenn.1984), *In the Matter of Brooks*, 58 B.R. 462 (Bankr.W.D. Pa.1986). Therefore, before a debtor will be denied a discharge under § 727(a)(2)(A), his actual subjective intent to hinder, delay or defraud creditors must be demonstrated.

■ Based on the evidence established in this record, this Court is satisfied that this Debtor is not entitled to a discharge for the following reasons:

It is clear that these transfers were not made in contemplation of a settlement of a divorce, certainly not those which were purportedly executed in 1983 when the Debtor was still married and there was no divorce pending. The Court expressly rejects the wife's testimony to the effect that she failed to record the deeds until 1988 because she forgot that she received them from her husband and only realized that she was the owner of these properties when she moved out in preparation for the divorce. It is not difficult to infer that after the husband suffered the judgment in the amount of $450,000 in the suit filed by Moore, he became painfully aware of the fact that unless these properties were transferred out, they might be subject to levy and execution by Moore, who no doubt was about to seek to obtain satisfaction of the judgment. Moreover, this Court is satisfied that none of the conveyances are supported by any consideration and from the facts it is fair to conclude that these purchases were falsely notarized and consummated in order to prevent Moore from reaching these properties and subjecting them to levy or execution.

In this connection, it should be noted and there is no question that both the Debtor and his then wife were more than equivocal in this testimony covering dates those deeds were executed and notarized. It is clear and appears from the notary seal that the notary's commission was to expire on October 9, 1991. Under *Fla.Stat.* § 117.01, a commission of a notary is valid for four years. Thus, a notary with a seal indicating an expiration date of 1991 could not have possibly notarized the document in 1983. In sum, there is hardly any question that after Moore obtained her judgment, there was a considered and deliberate effort to remove all properties from the legal ownership of the Debtor and to transfer them to his then wife. It is just as clear that these properties were not transferred, contrary to the divorce decree as part of an amicable party settlement between the parties. In this connection, it also should be noted that some of the transfers purportedly occurred several years before the divorce even started and one occurred one month before the Petition for bankruptcy was filed.

■ Considering the claim of false oath, this Court is also satisfied that the Debtor was fully aware of these transfers and he understood the questions on the Statement of Affairs and he did knowingly and willfully conceal these transfers by his negative answers to these questions. The Debtor's defense that in answering Question 9(b) he revealed these transfers by referring to the property settlement is woefully inadequate. The Debtor's failure to disclose these transfers on the Statement of Affairs, coupled with his answers under oath at the § 341 meeting, leaves no doubt that he did intend to conceal these transactions for the specific purpose of preventing the Trustee from pursuing these transac-

tions for the specific purpose to hinder a known creditor who was holding an unsatisfied judgment in the amount of $450,000 against the Debtor.

The professed unsophistication of this Debtor who claims to be a simple handyman with an eighth-grade education is belied by the fact that he was involved over the years in very extensive real estate transactions. The fact of the matter is that most of the documents involved in the transfers discussed were prepared by him and he fully understood the effect of a quitclaim deed and the assignment of mortgages and the legal requirements to perfect the transfers of real estate. Concerning the claim that the Debtor failed to keep adequate books and records, it is clear that he has none. However, since these properties apparently did not produce any sizable income, his failure to keep books might be excusable under the circumstances. In any event, based on the reasons stated above, this Court is satisfied that the Debtor is not entitled to his discharge.

A separate Final Judgment shall be entered in accordance with the foregoing.