Elouise Pepion COBELL,
et al., Plaintiffs,

v.

Gale A. NORTON, Secretary of the
Interior, et al., Defendants.

No. CIV.A.96–1285(RCL).

United States District Court,
District of Columbia.

Nov. 12, 2002.

Keith M. Harper, Lorna K. Babby, Native American Rights Fund, Washington, DC, Dennis Marc Gingold, Washington, DC, Elliott H Levitas, Kilpatrick Stockton, LLP, Washington, DC, for plaintiffs.

J. Christopher Kohn, U.S. Department of Justice, Commercial Litigation Branch, Washington, DC, Brian L. Ferrell, Mark E. Nagle, Robert Craig Lawrence, Scott Sutherland Harris, U.S. Attorney's Office, Washington, DC, Charles Walter Findlay, III, Barry Weiner, United States Department of Justice, Environment and Natural Resources, Washington, DC, Henry A. Azar, Jr., U.S. Department of Justice, Federal Programs Branch, Washington, DC, Seth Brandon Shapiro, U.S. Department of Justice, Civil Division/Ben Franklin, Washington, DC, Jonathan Brian New, U.S. Department of Justice, Civil Division, Federal Programs Branch, Washington, DC, Jennifer R. Rivera U.S. Department of Justice Civil Division, Washington, DC, Sandra Peavler Spooner, David J. Gottesman, Peter Blaze Miller, Cynthia L. Alexander, Mathew J. Fader, Amalia D. Kessler, U.S. Department of Justice, Commercial Litigation Branch, Washington, DC, John Charles Cruden, John Stemplewicz, U.S. Department of Justice, Ben Franklin Station, Civil Division, Washington, DC, John S. Most, United States Department of Justice, Trial Attorney, General Litigation Section, Environment & Natural Resources Division, Washington, DC, for Kevin Gover, Dept. of Interior, Gale Norton.

Robert D. Luskin, Patton Boggs, LLP, Washington, DC, Henry A. Azar, Jr., Jonathan Brian New, U.S. Dept. of Justice, Fed. Programs Branch, Washington, DC, Seth Brandon Shapiro, U.S. Dept. of Justice, Civ. Division/Ben Franklin Station, Washington, DC, Jennifer R. Rivera, U.S. Dept. of Justice, Civ. Div., Washington, DC, David J. Gottesman, Peter Blaze Miller, Cynthia L. Alexander, Mathew J. Fader, Amalia D. Kessler, U.S. Dept. of Justice, Commercial Lit. Branch, Washington, DC, for John D. Leshy, Edward B. Cohen, Michael F. Rossetti.

B. Michael Rauh, Manatt, Phelps & Phillips, L.L.P., Washington, DC, Henry A. Azar, Jr., Jonathan Brian New, U.S. Dept. of Justice, Fed. Programs Branch, Washington, DC, Seth Brandon Shapiro, U.S. Dept. of Justice, Civ. Division/Ben Franklin Station, Washington, DC, Jennifer R. Rivera, Tracy Lyle Hilmer, U.S. Dept. of Justice, Civ. Div., Washington, DC, David J. Gottesman, U.S. Dept. of Justice, Commercial Lit. Branch, Washington, DC, Dodge Wells, U.S. Dept. of Justice, Washington, DC, for Neal McCaleb.

Lawrence H. Wechsler, Janis, Schuelke & Wechsler, Washington, DC, for Eleni M. Constantine.

Donald Michael Barnes, Porter, Wright, Morris & Arthur, Washington, DC, for Roberta McInerney.

David Booth Beers, Shea & Gardner, Washington, DC, for James Regan.

William Aaron Dobrovir, Sperryville, VA, for Daniel Mazella.

Pamela J. Marple, Manatt, Phelps & Phillips, L.L.P., Washington, DC, for Randall Lewis.

Timothy Patrick Garren, U.S. Department of Justice, Civil Rights Division, Washington, DC, for U.S.

Brian L. Ferrell, Terry M. Petrie, U.S. Dept. of Justice, ENRD, Washington, DC, Gino D. Vissicchio, U.S. Dept. of Justice, Civ. Div., Washington, DC, John Warshawsky, Washington, DC, John J. Siemietkowski, U.S. Dept. of Justice, Commercial Lit. Branch, Washington, DC, for Dept. of Treasury.

Erik Lloyd Kitchen, Steptoe & Johnson, L.L.P., Washington, DC, for Ingrid D. Falanga.

Martha Purcell Rogers, Ober, Kaler, Grimes & Shriver, Washington, DC, for Timothy S. Elliott.

Michael R. Bromwich, Fried, Frank, Harris, Shriver & Jacobson, Washington, DC, Amy Berman Jackson, Trout & Richards, P.L.L.C., Washington, DC, for Edith R. Blackwell.

Roger Eric Zuckerman, Zuckerman Spaeder, LLP, Washington, DC, for Robert Lamb.

Kathleen Elizabeth Voelker, Washington, DC, for James Douglas.

Stephen M. Byers, Crowell & Moring, L.L.P., Washington, DC, for Dominic Nessi.

Michael R. Bromwich, Fried, Frank, Harris, Shriver & Jacobson, Washington, DC, for M. Sharon Blackwell.

Leslie B. Kiernan, Zuckerman Spaeder, LLP, Washington, DC, for Hilda Manuel.

L. Barrett Boss, Asbill, Moffitt & Boss, Chartered, Washington, DC, for Steven Swanson.

Plato Cacheris, John Francis Hundley, Baker & McKenzie, Washington, DC, Sydney Jean Hoffmann, Law Offices of Plato Cacheris, Washington, DC, for John Berry, Glenn Schumaker.

Barbara Ann Van Gelder, Wiley Rein & Fielding, LLP, Washington, DC, for James A. Eichner.

William Holt Briggs, Jr., Laura C. Zimmitti, Ross, Dixon & Bell, LLP, Washington, DC, for Phillip A. Brooks.

Thomas Edward Wilson, Berliner, Corcoran & Rowe, L.L.P., Washington, DC, for John S. Most.

Mary Lou Soller, Miller & Chevalier, Chartered, Washington, DC, for Chester Mills, Terrance Virden.

Jeffrey David Robinson, Melissa Heitmann McNiven, Baach, Robinson & Lewis, Washington, DC, for Lois J. Schiffer.

Dwight Phillip Bostwick, Melissa Heitmann McNiven, Baach, Robinson & Lewis, Washington, DC, for Anne Shields.

Larry Allen Nathans, Robert W. Biddle, Bennett & Nathans, L.L.P., Baltimore, MD, for David Shuey.

John Kenneth Zwerling, Zwerling & Kemler, P.C. Alexandria, VA, for Terry Steele.

Lisa Bondareff Kemler, Zwerling & Kemler, P.C., Alexandria, VA, for Deborah Maddox.

Russell David Duncan, Lisa Ann Freiman Fishberg, Coburn & Schertler, Washington, DC, for John A. Bryson, David Shilton.

E. Lawrence Barcella, Jr., Paul, Hastings, Janofsky & Walker, L.L.P., Washington, DC, for William G. Myers, III.

David Sidney Krakoff, Alessio D. Evangelista, Beveridge & Diamond, P.C., Washington, DC, for Daryl W. White.

Michael D. Goodstein, Resolution Law Group, PC, Washington, DC, for Tom C. Clark, II.

Bradley Stuart Lui, Morrison & Foerster, LLP, McLean, VA, for Sabrina McCarthy.

Stanley M. Brand, Andrew Dewald Herman, Brand & Frulla, P.C., Washington, DC, for Peter D. Coppelman.

Marshall L. Matz, Olsson, Frank & Weeda, P.C., Washington, DC, for Michael B. Jandreau.

Jefferson McClure Gray, D. Jacques Smith, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, for Kenneth Paquin, Kenneth Russell.

Emily M. Yinger, Hogan & Hartson, McLean, VA, for Accenture LLP.

William Leonard Gardner, Brian Michael Privor, Morgan, Lewis & Bockius, L.L.P., Washington, DC, for Willa B. Perlmutter.

Hamilton Phillips Fox, III, Sutherland, Asbill & Brennan, L.L.P., Washington, DC, for Charles W. Findlay.

Christopher J. Lovrien, Robert Christopher Cook, Jones, Day, Reavis & Pogue, Washington, DC, for Michael Carr.

Dennis Marc Gingold, Washington, DC, for James Simon.

Robert A. Salerno, Piper Rudnick LLP, Washington, DC, for Sarah Himmelhoch.

Albert Lee Nynum, Gadsden, AL, pro se.

Nathaniel Davis Owens, Sr., Anniston, Al, for Albert Lee Bynum.

Alan Lee Balaran, Washington, DC, pro se.

Richard Lee Cys, Davis Wright Tremaine, Washington, DC, Jonathan K. Tycko, Tycko Zavareei, LLP, Washington, DC, for Dow Jones & Co., Inc.

Christopher B. Mead, London & Mead, Washington, DC, for Kenneth F. Rossman.

Jill Elise Grant, Washington, DC, for Intertribal Monitoring Ass'n for Indian Trust Funds.

Neil James Ruther, Towson, MD, for Native American Indust. Distributors, Inc.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

The U.S. Supreme Court has stated that "[a] request for attorney's fees should not

result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Nevertheless, the prospect of fee awards often brings out the most miserly (or avaricious) qualities in lawyers, which in turn spawns the urge to produce a massive paper trail. The instant occasion is no exception.

Defendants filed two unmeritorious motions for protective orders. On March 29, 2002, this Court ordered defendants to pay "all reasonable expenses, including attorneys' fees, arising from [plaintiffs'] opposition" to those two motions [1222, 1224]. On April 29, 2002, plaintiffs submitted a fee statement claiming a total of $409,038.82, reflecting the fees and expenses incurred by four attorneys and one accountant in opposing defendants' motions [1270].[1] *See* Pls' Statement of Fees and Expenses Related to the Sanctionable Conduct of Defs. and Their Counsel ["Pls.' Statement"] at 1. Defendants filed a response [1297], which alleged that the statement included fees and expenses for matters beyond the scope of this Court's orders, and that the amount of time and rates claimed by plaintiffs were unreasonable and excessive. *See* Defs' Objections to Pls.' Statement of Fees and Expenses Filed April 29, 2002 ["Defs.' Opp'n"]. Defendants suggested that plaintiffs' statement was so "outrageously unreasonable" that their entire claim for fees should be disallowed; in the alternative, defendants suggested a reduction to $25,098.16. Plaintiffs filed a reply to defendants' objections [1310]. *See* Pls.' Reply re Pls.' Statement and Supporting Affidavits ["Pls.' Reply"]. Finally, on June 5, 2002, defendants sought leave to file a surreply [1329], which this Court granted on September 17, 2002 [1521] *See* Defs.' Mot. for Leave to File Surreply Regarding Pls.' Fee Application ["Defs.' Surreply Motion"]. Between these two dates came plaintiffs' opposition brief to the motion for leave [1336] and defendants' reply brief [1353].

Having considered all motions filed by the parties, and having conducted an independent review of all time entries submitted by plaintiffs with their fee application, the Court awards fees and expenses to plaintiffs in the amount of $125,484.87.

## I. PROCEDURAL BACKGROUND [2]

On January 21, 2000, defendants filed a motion for a protective order covering all documents responsive to paragraph 19 of the Court's First Order for Production of Information ("Trade Secrets Motion"). Defendants alleged that these documents were protected from disclosure by the Trade Secrets Act, 18 U.S.C. § 1905; by the Indian Mineral Development Act, 25 U.S.C. §§ 2101–2108 ("IMDA"); and by certain Interior Department regulations. In a report and recommendation filed with this Court, the Special Master determined that defendant's motion should be denied with respect to the Trade Secrets Act and Interior Department regulations, but granted to the extent that the IMDA protected confidential geological information of non-party tribes. The Court formally adopted the Special Master's report and recommendation, without objection, on March 29, 2000.

---

1. The contempt order entered by this Court on September 17, 2002 ordered plaintiffs to submit an application for fees and expenses incurred as a result of having to litigate the 2002 contempt trial. That application has not yet been filed with this Court.

2. Because the underlying facts of this litigation are detailed elsewhere, *see, e.g., Cobell v. Norton*, 240 F.3d 1081, 1086–1092 (D.C.Cir. 2001), *Cobell v. Babbitt*, 30 F.Supp.2d 24, 27–29 (D.D.C.1998), the Court will merely present a summary of the procedural background pertinent to a resolution of the instant matter.

However, on May 16, 2000, the Special Master filed a separate report and recommendation in response to plaintiffs' request for sanctions against defendants under Federal Rule of Civil Procedure 37(a)(4). The Special Master declared that upon reviewing the parties' memoranda, the relevant case law, and the record in this case, he had discovered

> evidence both clear and convincing that sanctions are warranted. Neither the facts nor the law 'substantially justifies' Defendants' reliance on the Trade Secrets Act, on the Indian Mineral Development Act as it applies to individual Indians, or on the cited Interior Department regulations. Only defendants' attempt to shield tribal geological records from public disclosure merited consideration.

Report and Recommendation Concerning Sanctions at 17. The Special Master recommended to this Court that defendants be required to reimburse plaintiffs for 75% of fees and expenses incurred in the course of opposing defendant's motion. This Court agreed, and on March 29, 2002, it ordered defendants to pay for 75% of plaintiffs' fees and expenses incurred in responding to the motion for a protective order.

On the same date, this Court ordered defendants to pay plaintiffs' fees and expenses incurred in opposing another of defendants' motions. On August 2, 2000, defendants filed a motion for a protective order "clarifying that [defendants] may produce e-mail in response to discovery requests by producing from paper records of e-mail messages rather than from back-up tapes and may overwrite backup tapes in accordance with Departmental directives" ("E–Mail Motion"). This marked the third time that defendants had made this argument during the present litigation, having previously litigated and lost on this very issue before both the Special Master and this Court. The Special Mas-

ter issued an opinion on July 27, 2001 denying defendants' motion and recommending that plaintiffs be reimbursed pursuant to Rules 26(c) and 37(a)(4) of the Federal Rules of Civil Procedure for fees and costs incurred in opposing the motion. This Court adopted that opinion, again without objection.

On April 29, 2002, plaintiffs submitted a statement of fees and expenses incurred in opposing defendants' motions. It is the fee statement and the filings responsive to it that presently concern the Court.

## II. ATTORNEYS' FEES AND EXPENSES

■ The proper method of awarding attorneys' fees for a violation of Rule 37 is the lodestar method, in which the court multiplies a reasonable hourly rate by a reasonable number of hours expended. *See Weisberg v. FBI*, 749 F.2d 864, 872–73 (D.C.Cir.1984) (determining a fee for a Rule 37 sanction by applying *Nat'l Ass'n of Concerned Veterans v. Sec. of Defense*, 675 F.2d 1319 (D.C.Cir.1982), which advocated the use of the lodestar method). Because plaintiffs seek sanctions against the United States, this Court "must scrutinize the claim with particular care." *Copeland v. Marshall*, 641· F.2d 880, 888 (D.C.Cir. 1980). Plaintiffs must satisfy their burden of demonstrating the reasonableness of each element of their fee request. *Am. Petroleum Inst. v. U.S. Environmental Protection Agency*, 72 F.3d 907, 912 (citing *In re North*, 59 F.3d 184, 189 (D.C.Cir. 1995)).

### A. Reasonable Hourly Rate

#### 1. Dennis Gingold

Plaintiffs' lead counsel, Dennis Gingold, seeks payment for work performed before January 1, 2000 at an hourly rate of $373.75, which represents an hourly rate of $325 plus a 15% charge, in lieu of itemized

expenses. For work performed after that date, Gingold requests payment based on an hourly rate of $488.75, representing an hourly rate of $425 plus the same 15% charge. He also seeks compensation at an hourly rate of $546.25 for time spent in court hearings, which represents an hourly rate of $475 plus 15% for expenses. Defendants contest these rates as excessive.

These rates do not represent the amount that plaintiffs are charged under their fee arrangement with Gingold. Instead, they represent the standard billing rates that he charges his other clients. Gingold requests that the Court compensate him at these higher rates because the rate he charges plaintiffs represents a reduction in his usual billing rate that was made to further the public interest. Pls.' Opp'n to Defs.' Mot. for Leave to File Surreply Regarding Pls.' Fee Application at 6–7.

■ This Court is permitted to award fees based on a market rate to an attorney who charges a reduced rate for "public-spirited or non-economic reasons." *Covington v. District of Columbia,* 57 F.3d 1101, 1107 (D.C.Cir.1995); *see also Save Our Cumberland Mountains, Inc. v. Hodel,* 857 F.2d 1516, 1519 (D.C.Cir.1988) (permitting a fee award at a market rate for attorneys who "adjusted [their] fee schedules downward from pro bono or quasi public interest motives to reflect the reduced ability of the client to pay or what the attorney saw as the importance and justice of the client's cause"). However, the attorney must satisfy a two-prong test. The first is a showing that "his or her custom of charging reduced rates is in fact attributable to 'public spiritedness.'" *Bd of Trustees of the Hotel and Rest. Employees Local 25 v. JPR, Inc.,* 136 F.3d 794, 806 (D.C.Cir.1998) (quoting *Covington,* 57 F.3d at 1108). The reason underlying this inquiry is that "the law was not written to subsidize attorneys who charge below-market rates because they cannot command

anything more." *Id.* The determination of whether the attorney has satisfied this prong is committed to the sound discretion of the district court. *Id.* at 807. Second, the attorney must offer evidence regarding the proper market rate for the services that were rendered. *Id.* The D.C. Circuit has explained that "in setting the market rate, the district court should consider what rate would be commensurate with the [attorney's] skill and experience, and with the quality of the [attorney's] work .... Because the district court is most familiar with the quality of the [attorney's] work, we will defer to its reasonable assessment of that work's market value." *Id.*

Gingold has successfully demonstrated that the reduced rate he charges plaintiffs is attributable to "public spiritedness." *Id.* at 1108. In addition to his personal affidavit, Gingold has submitted two client engagement letters dated September 1, 2000 and July 25, 2001. Pls.' Reply, Ex. 1. Both of these letters demonstrate that his current standard billing rate is $425 per hour, and his rate for time spent in court or conducting depositions is $475. Additionally, in lieu of itemizing expenses, Gingold includes a flat 15% charge calculated on the applicable billing rate. As the D.C. Circuit has noted, the problem of determining whether the rate that an attorney charges a particular client has been reduced in furtherance of the public interest is "diminished with respect to attorneys who charge variable rates (both at and below the market), with the latter attributable to public-spirited goals." *Covington,* 57 F.3d at 1108. This Court is satisfied that the lower rate that Gingold charges has been made in order to further the public interest, and not because he is unable to command an hourly rate competitive in the current market.

■ Plaintiffs have also provided this Court with evidence of the correct market

rate for attorneys in the Washington, D.C. area possessing a similar level of experience as Gingold. In *Laffey v. Northwest Airlines,* 746 F.2d 4 (D.C.Cir.1984), the D.C. Circuit devised a matrix that established a standard hourly rate for attorneys in the Baltimore–Washington area for the year 1982. The D.C. Circuit has since declared that updated versions of the matrix, which adjust the rates annually for inflation, may be relied on as evidence of the prevailing market rate for attorneys in the community. *Covington,* 57 F.3d at 1109. Plaintiffs submitted an updated *Laffey* matrix to accompany their fee statement. Pls.' Fee Statement, Brown Aff., Ex. 3. This matrix designates the hourly rate for services rendered between June 1, 1999 and May 31, 2000 by an attorney with twenty or more years of experience as $340. For services rendered between June 1, 2000 and May 31, 2001, the applicable rate is $350. Gingold has been a practicing member of the bar for over twenty years. Pls.' Fee Statement, Gingold Aff. ¶ 6. Defendants have suggested that if this Court elects to compensate Gingold at a higher rate than that which he charges plaintiffs, the maximum hourly rates should be $340 for work performed prior to June 1, 2000, and $350 thereafter. Defs.' Opp. at 32. The Court finds these rates to reflect prevailing market rates in the greater Washington area, and it will use these rates for its lodestar calculations involving compensation for Gingold.

### 2. Mark Brown

Attorney Mark Brown seeks compensation at the hourly rate of $350, the rate at which he has billed plaintiffs since the start of this litigation. His affidavit represents that he has specialized in litigation for the past 22 years. *See* Pls.' Statement, Brown Aff. ¶ 1. His requested rate corresponds precisely to the rate indicated on the *Laffey* matrix for services rendered by attorneys with 20 or more years of experience between June 1, 2000 and May 31, 2001. *See* Pls.' Statement, Brown Aff., Ex. 3.

Defendants claim that Brown has failed to demonstrate that he qualifies for the rate indicated by the *Laffey* matrix, citing *Griffin v. Washington Convention Center,* 172 F.Supp.2d 193 (D.D.C.2001), in which they claim "counsel was denied recovery at [*Laffey* ] rates where he failed to show that he had experience in particular cases that qualify as 'complicated, federal litigation.' " Defs.' Opp. at 33.[3] The differences between the instant case and *Griffin,* which was a contingency-fee case, are legion.[4] Moreover, though the magistrate judge in *Griffin* did state that "there is nothing automatic about the application of 'Laffey' rates," he commenced his discussion of attorneys' fees by observing: "One can begin with the premise that, in the ordinary case, a fee based on the actual rates an attorney charges would be prima facie reasonable. There is no better indication

---

**3.** Defendants incorrectly stated the case citation as "172 F.Supp. 193."

**4.** *Griffin,* 172 F.Supp.2d at 201 ("I have taken pains to point out that this is, in reality, a contingent fee case . . ."). In *Griffin,* plaintiff's lead counsel had lost the original client agreement, and the plaintiff had complained to the court about the manner of distribution that he had suggested to her. *Id.* at 195–96. Moreover, the plaintiff had never been charged on an hourly rate. *Id.* at 197. The lead counsel sought compensation for two associates who

had never litigated a case in federal court at the rate for which the *Laffey* matrix indicates attorneys with 4 to 7 years' experience should be compensated. *Id.* at 199. In the face of such shenanigans, it is no wonder that the magistrate judge declared that "awarding the 'Laffey' rates sought would be a gross abuse of discretion." *Id.* at 200. Instead, he awarded fees on a contingency basis. *Id.* at 201–02. Given the vast array of differences from this case, the applicability of *Griffin* to this case is nil.

of what the market will bear than what the lawyer in fact charges for his services and what his clients pay." *Id.* at 193, 197. The Court agrees. Therefore, Brown will be compensated at the rate that he charges for his services to plaintiffs.

### 3. Geoffrey Rempel

■ Rempel, a certified public accountant, seeks compensation for accounting services rendered, at an hourly rate of $225. This represents the rate at which plaintiffs were billed for his services during the time period covered by the fee statement. Defendants object to this rate as unreasonable, claiming that the better part of the services rendered by Rempel "appears to have been" more akin to paralegal work than accounting services, and should therefore be valued at a diminished rate. Defs.' Opp. at 33. Having reviewed Rempel's billing statements at length, as well as his supporting affidavits, the Court finds defendants' characterization of the nature of Rempel's services to be without merit. See Pls.' Statement, Rempel Aff. ¶¶ 5–6. The Court also finds credible Rempel's assertion that "[t]o the extent I incurred time that may be considered clerical or administrative in nature, that time is *de minimus* [sic] and immaterial to this fee application." *Id.* ¶ 7. Based on this evidence, the Court deems $225 to be a reasonable hourly rate of compensation for services rendered by Rempel.

### 4. Keith Harper and Lorna Babby

The two attorneys for Native American Rights Fund (NARF), Keith Harper and Lorna Babby, request payment at an hourly rate of $170. Defendants have expressly stated that they do not contest this rate. *See* Defs' Opp. at 30 n. 32. Therefore, in accordance with the law of this Circuit, the Court will compensate Harper and Babby at their requested rate. *See Cobell v. Babbitt*, 188 F.R.D. 122, 125–26 (D.D.C.1999) ("Cobell IV") (citing cases).

### B. Reasonable Number of Hours

Defendants vigorously contest the number of hours that plaintiffs claim they spent opposing the two motions. They argue both that plaintiffs included time not spent responding to these motions, and that the amount of time they did spend opposing them was "grossly excessive." *See* Defs.' Opp. at 18, 23. We first examine defendants' criticisms of substantive areas of plaintiffs' fee statement before turning to their objection to the overall amount of time expended.

### 1. Plaintiffs' March 21, 2002 Motion for Order to Show Cause

■ Defendants state that among the hours that plaintiffs claim to have spent opposing defendants' E–Mail Motion are hours spent on other matters, including work relating to plaintiffs' Motion for Order to Show Cause Why Interior Defendants and Their Counsel Should Not be Held in Contempt for Destroying E–Mail, which was filed on March 21, 2002. In response, plaintiffs assert that their "opposition" to defendants' E–Mail Motion should be understood to include "not merely opposing a protective order, [but also] understanding *and uncovering* fraud that defendants perpetrated on this Court and plaintiffs." Pls.' Reply at 13 (emphasis in original). The Court, however, does not understand "opposition" to be subject to such a broad construction. Both of this Court's March 29, 2002 orders limit plaintiffs' recovery to "reasonable expenses, including attorneys' fees, *arising from* their opposition to defendants' motion for protective order" (emphasis added).

In *Cobell IV,* this Court noted that the causal connection between defendants' violations of Rule 37 and reasonable expenses incurred by plaintiffs was "not to be taken lightly." 188 F.R.D. at 127. Rather, "[a] near 'but for' relationship must exist be-

tween the Rule 37 violation and the activity for which fees and expenses are awarded." *Id.* The same holds true here. Plaintiffs may only recover for expenses that directly arise from their opposition to defendants' E–Mail Motion and Trade Secrets Motion, not for expenses incurred while engaged in other matters. Expenses pertaining solely to plaintiffs' March 21, 2002 motion for an order to show cause, for example, do not "aris[e] from" opposition to defendants' E–Mail Motion, which was filed on September 2, 2000. In short, plaintiffs will not be compensated for any expenses that do not directly arise from opposition to the E–Mail Motion, even though such expenses might relate to issues such as defendants' failure to produce requests for email or defendants' destruction of email.

■ Nor will plaintiffs be compensated for time spent preparing their September 12, 2000 motion for leave to file a surreply to the E–Mail Motion. In his October 24, 2000 opinion and order denying plaintiffs leave to file the surreply, the Special Master agreed with defendants' conclusion that the surreply represented "merely a continuation of the same arguments [plaintiffs] made in their earlier response." Special Master's Opinion and Order at 3 (quoting Dep't of Interior's Opp. to Pls.' Mot. for Leave to File Surreply at 1). Although time spent preparing the surreply could conceivably be considered to have been spent on a matter "arising from" opposition to the E–Mail Motion, the Court deems it unnecessary to compensate plaintiffs for drafting a document that merely reasserted points already made and that did not become part of the record in this case. Therefore, the only hours billed after August 17, 2000 that this Court will consider to have arisen from opposition to the E–Mail Motion are hours spent preparing for and attending the Special Master's October 27 hearing on the E–Mail Motion.

■ It is in response to plaintiffs' inclusion of matters not directly relating to the E–Mail Motion that defendants urge this Court to take the "admittedly unusual" step of denying plaintiffs' fee application in its entirety. Defs.' Opp. at 3. It is true that courts in this Circuit may deny a party's fee statement in its entirety if the statement is "manifestly inadequate." *Jordan v. U.S. Dep't of Justice*, 691 F.2d 514, 518 (D.C.Cir.1982) (quoting *Nat'l Ass'n of Concerned Veterans v. Sec. of Defense*, 675 F.2d 1319, 1331 n. 19 (D.C.Cir.1982)). However, the D.C. Circuit has made it clear that

> [t]otal denial of requested fees as a purely prophylactic measure ... is a stringent sanction, to be reserved for only the most severe of situations, and appropriately invoked only in very limited circumstances. Outright denial may be justified when the party seeking fees declines to proffer any substantiation in the form of affidavits, timesheets or the like, or when the application is grossly and intolerably exaggerated, or manifestly filed in bad faith.

*Id.* Such a severe sanction is not warranted in this instance. True, plaintiffs should have known better than to include expenses not directly related to their opposition to the E–Mail Motion. But their reply brief demonstrates that they apparently believed in good faith (however foolishly) that they could include expenses related to issues such as defendants' destruction of email, even though these issues possessed only a tangential relation to the E–Mail Motion. *See* Pls.' Reply at 8–16. Plaintiffs made no attempt to disguise the nature of these time entries. It is simply not the case, therefore, that the fee statement is "manifestly inadequate."

Moreover, a much less drastic remedy will suffice. The Court will exclude from plaintiffs' fee application all expenses unre-

lated to opposing the E–Mail Motion and Trade Secrets Motion. The Court will also deduct a portion of the hours spent by plaintiffs in preparing their fee application, to represent the fact that a portion of these hours were spent enumerating expenses for which plaintiffs will not be compensated. Finally, this Court will take this opportunity to caution plaintiffs that, in the future, they would do well to be more circumspect when submitting fee statements to ensure that they do not include time entries and expenses beyond the scope of this Court's orders.

### 2. Opposition to Defendants' December 22 Motion for Modification of the Trade Secrets Motion

■ Defendants also object to recovery for time spent on "an entirely separate series of motions" from the Trade Secrets Motion. Defs.' Opp. at 10. On December 22, 2000, the Department of the Interior filed a motion to modify the Trade Secrets Motion ("Motion to Modify"). Plaintiffs responded to the Motion to Modify with an opposition brief and a cross-motion to vacate the March 29, 2000 protective order. Defendants insist that any time spent on this "entirely separate series of motions" should not be recoverable. It is difficult to understand why defendants consider these motions to be "entirely separate." After all, the Motion to Modify included, and expanded upon, the very arguments that they made in the Trade Secrets Motion, and for which they were sanctioned—namely, that certain documents sought by plaintiffs were protected by the Trade Secrets Act and the IMDA. More importantly, a direct causal connection exists between the actions by defendants that violated Rule 37 and the activity for which plaintiffs seek compensation: if not for the Trade Secrets Motion, there would have been no protective order; if not for the protective order, there would have been no motion to vacate the protec-

tive order or Motion to Modify; if there had been no Motion to Modify, then plaintiffs would never have filed their opposition brief. The expenses that plaintiffs incurred in preparing these motions followed as a direct consequence of defendants' filing of the Trade Secrets Motion. Therefore, defendants must reimburse plaintiffs for 75% of these expenses, including attorneys' fees.

### 3. Overall Number of Hours

■ Defendants charge that the total amount of time reflected on plaintiffs' fee statement represents an excessive and unreasonable number of hours. However, defendants have chosen to ignore this Court's admonition in *Cobell IV* that the better practice in this Circuit is to suggest an appropriate across-the-board percentage reduction for the fee amount claimed. *See Cobell IV*, 188 F.R.D. at 126 (citing cases). Instead, defendants merely assert that "60 hours seems a reasonable allowance of time" for plaintiffs to have spent opposing each of the two motions. Defs.' Opp. at 20. Defendants fail to enlighten this Court as to the significance of the number sixty. Apparently, it was chosen at random, because no reason is presented as to why this figure, as opposed to any other, represents a "reasonable" amount of time. The Court must decline the invitation to impose such a manifestly arbitrary limitation, lacking any basis in reality.

■ As stated above, plaintiffs have the burden of demonstrating that the amount of time they expended in opposing defendants' motions was reasonable. This burden is satisfied by submitting a fee application containing "sufficiently detailed information about the hours logged and the work done" that permits the district court to "make an independent determination whether or not the hours claimed are justified." *Nat'l Ass'n of Concerned Vet-*

*erans,* 675 F.2d at 1327. On the other hand, "the fee application need not present the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *Id.* (quoting *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C.Cir. 1980)).

This Court thus has two tasks. It must examine plaintiffs' individual time entries to determine whether each entry is detailed enough for this Court to determine independently whether the amount of time claimed is justified. The Court must then make that determination as to whether the hours claimed are reasonable. As explained below, with a few exceptions, plaintiffs have satisfied their burden of providing "sufficiently detailed information" about the activities for which they presently seek compensation. In those few instances where plaintiffs provided unduly vague entries that did not satisfy this burden, the Court has deducted hours as it deems appropriate.

The Court must also determine whether the hours that plaintiffs have claimed are reasonable. A recent case from this Circuit has clarified the task of the Court in this matter:

> The touchstone inquiry is whether the time expended on particular tasks was reasonable. Parties cannot be reimbursed for nonproductive time or duplicative activities. However, contests over fees should not be permitted to evolve into exhaustive trial-type proceedings.

*Martini v. Fed. Nat'l Mortgage Ass'n,* 977 F.Supp. 482, 487 (D.D.C.1997) (citations and internal punctuation omitted). Moreover, "[the determination of how much to trim from a claim for fees is committed to the [district] court's discretion]." *Oklahoma Aerotronics, Inc. v. United States,* 943 F.2d 1344, 1347 (D.C.Cir.1991).

The considerable task that plaintiffs faced in opposing the E–Mail Motion justifies the number of hours that they billed. Given the extensive nature of the record that plaintiffs were required to peruse in preparation of their opposition brief, the extensive factual development that they put forth in support of their arguments, and the fact that they ultimately prevailed in their opposition, this Court is satisfied that the amount of time expended was reasonable.

On the other hand, the Court is not entirely satisfied as to the reasonableness of the overall amount of time plaintiffs expended in their opposition to the Trade Secrets Motion. In particular, the Court finds the 149.6 hours claimed by Harper to be excessive on its face, considering that the preparation of the opposition brief and the responses to defendants' Motion to Modify does not appear to have required an unusually great expenditure of effort by plaintiffs. Therefore, Harper's hours will be reduced by one-third, resulting in an adjusted total of 99.7 hours. Moreover, assuming that the hours billed by Harper represented productive work, it would seem unnecessary for attorneys Gingold and Brown to have expended a combined total of 119.5 hours to supplement the work performed by Harper. Therefore, both of their hours will be reduced by 20%. The adjusted total for Gingold is 65.4 hours, of which 28.3 hours will be compensated at an hourly rate of $340, and 37.1 hours will be compensated at an hourly rate of $350. The adjusted total for Brown is 30.2 hours.

4. Time Spent Preparing Fee Statement

■■■ "Within bounds, ... time reasonably devoted to obtaining attorneys' fees in the context of litigation where the court must be petitioned for such an award is

itself subject to an award of fees." *Environmental Defense Fund v. EPA*, 672 F.2d 42, 62 (D.C.Cir.1982); *cf. Sierra Club v. EPA*, 769 F.2d 796, 811 ("The hours reasonably expended on [preparing a fee petition] are compensable.").

Defendants argue for deletion of those portions of the fee statement reflecting time spent calculating hours not spent on the matters for which defendants were sanctioned. Though plaintiffs appear to have included these hours on their statement in good faith, *see supra* section II. B.1, nevertheless, they represent hours for which plaintiffs will not be compensated. It is only appropriate to exclude time spent by plaintiffs enumerating these hours in preparation for filing their fee statement. Defendants, however, prove singularly unhelpful in suggesting how to remedy the situation. Their suggestion of ten (10) hours as the "outside limit of a reasonable sum" of time spent by all five attorneys to prepare the billing statement seems to be a number pulled from thin air. Defs.' Opp. at 27. Almost as ludicrous is defendants' suggestion that because plaintiffs did not maintain separate tallies of time spent opposing defendants' two motions, during the time in which they were opposing them, defendants should not have to pay for the unnecessary "extra work" involved in tallying these hours after the fact. *Id.* at 25. Apparently, plaintiffs should have been prescient enough not only to foresee that this Court would deny the two motions, but also to predict that the Court would subsequently impose sanctions on defendants for having filed the motions in the first place. The Court will instead reduce the time spent preparing the fee statement in approximate proportion to the time spent calculating the non-compensable hours.

Plaintiffs have also requested compensation for time spent responding to defendants' challenges to its fee statement. In *Environmental Defense Fund*, the D.C. Circuit compensated fee applicants for the costs of litigating the issue of the fee award. 672 F.2d at 61–64. The court explained that

[f]or us, the critical fact here is that EDF was required to seek a court award of attorneys' fees under [the Toxic Substances Control Act]. The attorneys' fee question has, as a consequence, become one of the issues of this case. EDF, therefore, should be entitled to receive just attorneys' fees for time reasonably expended to resolve the matter in dispute if the court otherwise determines such fees to be appropriate.

*Id.* at 62. The same critical fact is present here. This Court ordered plaintiffs to submit filings detailing the amount of reasonable expenses incurred in opposing defendants' two motions. At that point, it became an issue in this case. Within reasonable limits, plaintiffs should be compensated for hours expended to litigate this issue.

However, the applicants in *Environmental Defense Fund* submitted documentation of time expended litigating the fee award issue that was "as detailed and complete as the documentation for the case-in-chief" and "ma[de] plain the fact that potentially duplicative and/or nonproductive hours have been excluded." *Id.* at 63. Plaintiffs have largely failed to provide any such detailed documentation in support of their requests for compensation. Only Rempel has provided a schedule listing specific tasks he performed in response to defendants' objections, and the precise amount of time expended upon each task. *See* Pls.' Reply, Rempel Aff., Schedule C. Because Gingold and Brown have failed to provide any such detailed time record supporting their requests, they will not be compensated for time spent responding to defendants' objections to the fee state-

ment. Moreover, their failure to provide such documentation in a timely fashion will be deemed to constitute a waiver of their right to compensation for time thus spent.

The Court finds that the total number of hours claimed by plaintiffs to prepare the fee statement, after the adjustments discussed above have been made, represents a reasonable expenditure of time. Each applicant was required to sort through numerous billing statements to separate out hours spent upon a particular subcategory of this litigation, a task both tedious and time-consuming. The applicants also prepared individual affidavits in support of the hours claimed. The amount of time spent upon these tasks was reasonable, and plaintiffs will be compensated for the hours thus expended.

### C. Expenses

■ Defendants also object to expenses claimed by Gingold, Babby, and Harper. All three attorneys seek compensation for expenses in an amount equal to 15% of their hourly rate multiplied by the number of hours billed on this matter. They assert that this amount represents a "reasonable estimate of all expenses that would otherwise have been charged as disbursements." *See* Pls.' Statement, Harper Aff. ¶ 7; *cf.* Gingold Aff. ¶ 8.

Gingold seeks this award of expenses because his fee arrangement with plaintiffs includes a charge for overhead in an amount equal to 15% of his hourly billing rate. As stated above, however, this Court has chosen to compensate Gingold at rates that represent the market rate of his services, not the actual billing rates that he charges to plaintiffs. There is thus no basis for this Court to compensate Gingold for a charge that is not included in the applicable market rates on which his compensation is based.

Babby and Harper, on the other hand, do not represent that their fee arrange-

ment with plaintiffs includes compensation for expenses in the amount of 15% of their hourly rate. Rather, they seek to be compensated for an additional 15% of their hourly rate "in lieu of detailed and separate 'expenses' other than attorneys fees." Pls.' Statement, Harper Aff. ¶ 7. The Court declines to award an amount representing expenses that have not been itemized.

### III.  ITEMIZED ANALYSIS

#### A.  Method

As it did in *Cobell IV,* this Court will independently scrutinize each of the time entries submitted in conjunction with plaintiffs' statement. Entries must conform to the requirements set forth above in section II. Nonconforming entries will be eliminated from the record.

#### B.  Analysis of E–Mail Motion Time Entries

##### 1.  *Before August 2000*

As explained in section II.B.1 above, plaintiffs will not be compensated for time spent on matters that do not "directly arise" from their opposition to the E–Mail Motion filed on August 2, 2000. Because no evidence suggests that any time entries before August 2000 represent work that contributed to plaintiffs' opposition brief, the Court will deny recovery for these hours. This includes 53.1 hours claimed by Gingold between May 1999 through July 2000, 5.2 hours claimed by Rempel during June 2000, 11.5 hours claimed by Babby from September 1999 through April 2000, and 7.3 hours claimed by Harper for September 1999 and April 2000.

##### 2.  *August 2000*

##### a.  Gingold

Gingold will not receive compensation for his August 2000 time entries. Initially,

the Court must exclude 1.7 hours spent working on issues involving defendants' destruction of email and plans to seek contempt sanctions against defendants for this destruction. The remainder of time entries consist largely ·of the statement "Work on e-mail brief." It is unclear which brief Gingold refers to, because all of the entries except one postdate August 16, the date plaintiffs filed their opposition brief to the E–Mail Motion. These entries obviously cannot represent time spent preparing the opposition brief. Nor does the single remaining entry predating August 16 unambiguously refer to preparing the opposition brief. That entry, for August 12, states only "Work on e-mail brief," just like the majority of the post-August 16 entries. Therefore, the remaining entries, totaling 41.2 hours, will be excluded.

### b. Brown

Of Brown's 41 time entries for August, which total 112.5 hours, only 18 clearly refer to preparing the opposition brief. The remaining entries, which total 51.5 hours, will be excluded. Additionally, two entries consist of the following: "Review motion/prepare opposition outline; legal research re email issues." The latter portion of these two entries, which are dated August 4 and 5, does not clearly refer to time spent researching the opposition brief. Therefore, 50%. of the time for these two entries, or 5.1 hours, will be deducted. Brown will thus be compensated for 55.9 hours for the month of August.

### c. Rempel

Of Rempel's 37 time entries for August, which total 101.2 hours, only 12 entries unambiguously refer to hours spent preparing or revising the opposition brief. The remaining 25 entries, which total 61.9 hours, will not be counted. One remaining entry, dated August 5, relates to a discussion with Brown and Gingold about both the opposition motion and plaintiffs' email

contempt motion. 50% of the time for this entry, or 0.1 hours, will therefore be deducted. Rempel's adjusted total for the month of August is 39.2 hours.

### d. Babby

One of Babby's 15 entries for August does not refer to time spent on the opposition brief. That entry, for 0.4 hours, dated August 8, will be excluded. Additionally, four entries include time spent both on preparing the opposition brief and on other matters. Therefore, these four entries—0.4 hours for August 2, 0.6 hours for August 8, 0.5 hours for August 11, and 0.5 hours for August 15—will be reduced to 0.1 hours, 0.2 hours, 0.3 hours, and 0.1 hours, respectively. Babby's adjusted total for the month of August is 43.8 hours.

### e. Harper

Harper includes only 4 time entries for August for time spent on the opposition brief. Two of these, 7 hours on August 8 and 0.5 hours on August 11, include multiple matters, and will be reduced to 3.5 hours and 0.2 hours, respectively. Harper's adjusted total for August is 5.2 hours.

### 3. *After August 2000*

As explained above in II.B.1, the only time entries after August 17, 2000 that count towards plaintiffs' total are those reflecting time spent preparing for and attending the Special Master's October 27, 2000 hearing on the E–Mail Motion. Entries pertaining to the plaintiffs' proposed surreply and their motion for leave to file the surreply will be excluded.

### a. Gingold

Only four entries after August 2000 relate to the October 27 hearing. On October 26, Gingold billed 10.4 hours in preparation for the hearing, and billed 2.7 hours

on October 27 for attending the hearing and discussing it afterward with Harper. Gingold also spent a total of 1.5 hours on July 27 and July 31, 2001 discussing the Special Master's opinion with Rempel. The October 26 time entry is not detailed enough for this Court to determine independently whether the amount of time claimed is justified. The entry states only "Prepare for Special Master E–Mail hearing." Therefore, the time entry will be reduced by 50%. Gingold's adjusted total for the months after August 2000 is 9.4 hours.

### b. Brown

Brown will be compensated for 0.9 hours billed on September 11, 2000 for reviewing defendants' reply brief and for 3.3 hours spent preparing for and attending the October 27 hearing. Brown's total for the months after August 2000 is 4.2 hours.

### c. Rempel

Rempel will be compensated for 1 hour billed on September 9, 2000 for reviewing defendants' reply brief. Additionally, Rempel billed 3.6 hours for attending the October 27 hearing and discussing the hearing with Gingold and Elouise Cobell, and 0.9 hours for reviewing the hearing transcripts on November 7. Finally, Rempel spent 1.7 hours on July 27, 2001 reviewing the Special Master's opinion and discussing it with Gingold. Rempel's total for the months after August 2000 is 7.2 hours.

### d. Babby

Babby's only time entry after August 2000 relating to the E–Mail Motion consists of 2.3 hours billed on September 12, 2000 for reviewing defendants' reply brief. Because this entry includes time spent on another matter, it will be reduced by 50% to 1.2 hours.

### e. Harper

Harper billed 1 hour on October 27 for discussing the Special Master's hearing and 1.2 hours on August 1, 2001 for reviewing the Special Master's opinion and order. Harper's total for the months after August 2000 is 2.2 hours.

## C. Monthly Analysis for Trade Secrets Motion Time Entries

### 1. *December 1999*

### a. Gingold

Gingold billed 5 hours during this month for discussing the proposed Trade Secrets Motion with Harper and with the Justice Department. Defendants do not object to these hours, and the Court finds them to be reasonable.

### b. Babby

Babby billed 0.4 hours on December 23 for reviewing the proposed motion. On the same day, she participated in a conference call with Gingold and Harper during which the proposed motion was discussed. Because it was one of only four topics discussed, however, the 2.3 hours she billed will be reduced by 75% to 0.6 hours. Babby's adjusted monthly total is 1 hour.

### c. Harper

Harper billed 2.3 hours for the conference call mentioned above. As with Babby, this entry will be reduced to 0.6 hours. Harper also billed 0.6 hours on December 23 for researching the proposed motion, 1.5 hours on December 28 for reviewing the order and discussing it with Gingold, and 1.5 hours on December 29 for drafting a responsive letter to defendants. His adjusted monthly total is 4.2 hours.

**2.** *January 2000*

**a.** Babby

On January 27, Babby billed 2.3 hours for reviewing the Trade Secrets Motion and discussing it with Gingold. This number will be reduced by 67% to reflect the fact that this time entry includes two unrelated matters. Her adjusted monthly total is 0.8 hours.

**b.** Harper

All twelve of Harper's January entries involve preparing the opposition to the Trade Secrets Motion or discussing it with co-counsel or the Special Master. His entry of 1.5 hours for January 3 and entry of 0.7 hours for January 19 will be reduced by 50% to reflect the fact that an unrelated matter was discussed during the two phone conversations for which his time was billed. His adjusted monthly total is 24.7 hours.

**3.** *February 2000*

**a.** Gingold

Gingold billed 27.9 hours during this month in conjunction with preparing the opposition brief and attending the Special Master's February 29 hearing on the Trade Secrets Motion.

**b.** Babby

All entries for this month pertain to either researching and drafting the opposition brief or attending the February 29 hearing, except for the time entry for February 25. That entry will be excluded. Babby's adjusted total for February is 27.8 hours.

**c.** Harper

All of Harper's entries for this month relate to preparing the opposition brief, including performing legal research, and attending the February 29 hearing. The February 25 entry of 3.2 hours will be reduced by 67% to reflect the fact that two unrelated matters were discussed during the meeting with co-counsel. Harper's adjusted total for February is 78.1 hours.

**4.** *March 2000*

**a.** Gingold

Gingold billed 1 hour for discussing with Babby the March 2 opinion of the Special Master partially granting defendants' Trade Secrets Motion.

**b.** Brown

Only one of Brown's entries includes time related to the Trade Secrets Motion. On March 10, he billed 3.4 hours for researching trade secrets laws. This amount will be reduced by 50% because the entry also includes time spent on an unrelated matter. Brown's monthly total is 1.7 hours.

**c.** Babby

Babby billed 1.7 hours for reviewing the March 2 recommendation and report of the Special Master and the transcript of the February 29 hearing.

**d.** Harper

Harper's entries for March 2 and 3 involve time spent reviewing the transcript of the February 29 hearing and the March 2 recommendation and report. His monthly total is 2.1 hours.

**5.** *April 2000*

**a.** Gingold

Gingold billed 2.9 hours for discussing the Trade Secrets Motion with Babby. This amount will be reduced by 50% because the conversation also concerned the March 29 preliminary injunction hearing. Gingold's monthly total is 1.5 hours.

#### b. Babby

Neither of Babby's two entries for April refer unambiguously to the Trade Secrets Motion. Therefore, both will be excluded.

#### 6. *May 2000*

##### a. Rempel

Rempel billed 0.4 hours for forwarding the Special Master's May 16 report and recommendation to co-counsel.

##### b. Babby

Babby includes 1.8 hours for reviewing the May 16 report and recommendation and discussing it with Gingold. This amount will be reduced by 0.1 hours because the conversation with Gingold also involved the plaintiffs' show cause motion.

##### c. Harper

Harper includes 5 hours for reviewing the May 16 report and recommendation and researching the caselaw mentioned therein. This amount will be reduced by 33% because the entry includes discussion of a status report. Harper's monthly total is 3.3 hours.

#### 7. *June 2000*

Rempel includes 0.3 hours for reviewing defendants' May 31 motion for clarification of the Special Master's May 16 report.

#### 8. *July 2000*

Neither of Brown's two entries seem to be connected with the Trade Secrets Motion, and therefore they will be excluded.

#### 9. *December 2000*

Brown includes 0.3 hours for conferring with opposing counsel about Interior's December 22 motion to modify the March 29 protective order. As explained above in II.B.2, time expended opposing the motion to modify will be included as expenses arising from plaintiffs' opposition to the Trade Secrets Motion.

#### 10. *January 2001*

##### a. Gingold

Gingold includes 42.9 hours expended in preparing the opposition brief to Interior's December 22 motion to modify.

##### b. Brown

Brown includes 14.3 hours spent revising plaintiffs' opposition brief. The Court will include these entries, but will not include another 2.6 hours billed for preparing an opposition brief for defendants' motion for extension of time to file its reply brief. These latter hours bear an attenuated connection to the Trade Secrets Motion.

##### c. Rempel

Rempel includes 8.8 hours discussing and drafting the opposition brief. The Court includes these entries, but will not include another 1.5 hours billed for preparing the opposition brief for defendants' motion for extension of time to file its reply brief.

##### d. Harper

Harper includes 37.5 hours spent drafting the opposition brief and plaintiffs' cross-motion to vacate the March 29 protective order. The January 12 entry will be reduced by 50% because it includes time spent discussing a separate motion with Gingold. Harper's adjusted monthly total is 37.2 hours.

#### 11. *February 2001*

The Court will exclude all time entries for this month. Gingold's seven entries reflect time spent drafting a response to "defendants' motion to vacate 3/29/00 protective order" and working on an unspecified "opposition brief." The Court is unclear which documents Gingold refers to. It cannot refer to plaintiffs' opposition brief to defendants' motion to modify,

which was filed on January 16. Lacking a useful reference for these entries, the Court must exclude them. The entries for Brown, Rempel, and Harper represent time spent revising plaintiffs' reply to its motion for leave to file a surreply to defendants' motion for an extension of time to file its own reply brief. Plaintiffs' reply brief bears at best a tangential relationship to the Trade Secrets Motion, and therefore time spent working on it will not be compensated.

### 12. *March 2001*

#### a. Gingold

Gingold includes 3 hours researching issues relating to IMDA and the Trade Secrets Act, and discussing these issues with co-counsel. This work apparently occurred in conjunction with the off-the-record hearing in March before the Special Master regarding the March 29 protective order, which is referenced in Brown's entries for this month.

#### b. Brown

Brown includes 24.4 hours spent preparing for the March hearing before the Special Master. The two entries for March 6 will be reduced by 50% and 67%, respectively, because they include time spent on unrelated matters. Brown's adjusted total for this month is 20.9 hours.

#### c. Rempel

Rempel includes one entry for 1.8 hours spent discussing IMDA-related issues with Gingold and Brown.

### 13. *May 2001*

#### a. Gingold

Gingold includes 0.5 hours for reviewing the Special Master's May 16 report and recommendation.

#### b. Brown

Brown includes 0.5 hours for reviewing the Special Master's May 16 report and recommendation.

#### c. Rempel

Rempel's May 14 entry for reviewing prior pleadings relating to IMDA and the Trade Secrets Act will be excluded. There is no apparent connection presented between reviewing these pleadings and opposing the Trade Secrets Motion.

### 14. *After May 2001*

Rempel's two entries for June 7, 2001 and April 2, 2002 will not be included. There is no apparent connection presented between the work that these entries represent and opposing the Trade Secrets Motion.

### D. Time Spent Preparing the Fee Statement

Gingold billed 31.7 hours for preparing the E–Mail Motion portion of the fee statement, and 29.5 hours for preparing the Trade Secrets Motion portion, for a total of 61.2 hours.

Brown billed 18.7 hours for preparing the E–Mail Motion portion, and 17.4 hours for preparing the Trade Secrets Motion portion, for a total of 36.1 hours.

Rempel billed 44.3 hours for preparing the fee statement.[5] Additionally, Rempel billed 15.5 hours for responding to defendants' objections to the fee statement, for a total of 59.8 hours. Harper billed 52.5 hours. His entry of 1.1 hours for April 1, 2002 will be reduced by 75% because it involved a conversation with Gingold about several matters, only one of which was preparation of the fee statement. Additionally, the entry of 0.6 hours for April 26

---

**5.** Three of these hours were not included in plaintiffs' original fee statement, but were subsequently included in an updated statement submitted with plaintiffs' reply brief.

will be excluded because it does not pertain to preparation of the fee statement. The adjusted total is 51.1 hours.

As explained *supra* section II.B.4, the Court will deduct the time spent preparing the fee statement in approximate proportion to the time spent calculating hours that were not spent opposing the E–Mail Motion. Of the 246.1 hours that Gingold claimed for opposing the E–Mail Motion, approximately 214.5 hours, or 87%, have been excluded by this Court. Therefore, the Court will reduce the amount of time that he spent preparing this portion of his statement by 87%, or 27.6 hours (87% of 31.7 hours).

Of the 128.7 hours that Brown claimed for opposing the E–Mail Motion, approximately 59.5 hours, or 46%, have been excluded. The Court will reduce the amount of time he spent preparing this portion of his statement by 46%, or 8.6 hours (46% of 18.7 hours).

Approximately 194.1 hours of the 292.4 hours (66%) that Rempel billed for opposing the E–Mail Motion were excluded. The Court will assume that Rempel spent half of the total time billed for preparing the fee statement on compiling entries related to the E–Mail Motion, or 22.2 hours. The Court will deduct 66% of this time, or 14.7 hours.

Approximately 23.5 out of the 46.9 hours (50%) billed by Harper were non-compensable. Again, the Court assumes that Harper spent half of the total time billed for preparing the fee statement on compiling entries related to the E–Mail Motion, or 26.3 hours. The Court will deduct 50% of this time, or 13.2 hours.

### E. The Lodestar Figure

To determine the lodestar figure, the Court multiplies the hourly rates determined above by the adjusted total hours for each applicant:

**Fees for Opposing E–Mail Motion**

|  | Hourly Rate | Total Hours | Fee Award |
|---|---|---|---|
| Gingold (before June 1, 2000) | $340 | 0 | $ 0 |
| Gingold (after June 1, 2000) | $350 | 9.4 | $ 3290.00 |
| Brown | $350 | 60.1 | $21,035.00 |
| Rempel | $225 | 46.4 | $10,440.00 |
| Babby | $170 | 45 | $ 7650.00 |
| Harper | $170 | 7.4 | $ 1258.00 |

**Fees for Opposing Trade Secrets Motion**

|  | Hourly Rate | Total Hours | Adjusted Total Hours | Subtotal | Multiplier | Fee Award |
|---|---|---|---|---|---|---|
| Gingold (before June 1, 2000) | $340 | 35.4 | 28.8 | $ 9792.00 | 0.75 | $ 7344.00 |
| Gingold (after June 1, 2000 ) | $350 | 46.4 | 37.1 | $12,985.00 | 0.75 | $ 9738.75 |
| Brown | $350 | 37.7 | 30.2 | $10,570.00 | 0.75 | $ 7927.50 |
| Rempel | $225 | 11.3 | 11.3 | $ 2542.50 | 0.75 | $ 1906.87 |
| Babby | $170 | 33 | 33 | $ 5610.00 | 0.75 | $ 4207.50 |
| Harper | $170 | 149.6 | 99.7 | $16,949.00 | 0.75 | $12,711.75 |

**Fees for Preparing Fee Statement**

|  | Hourly Rate | Total Hours | Adjusted Total Hours | Fee Award |
|---|---|---|---|---|
| Gingold (before June 1, 2000) | $340 | 0 | 0 | $ 0 |
| Gingold (after June 1, 2000) | $350 | 61.2 | 33.6 | $11,760.00 |

| | | | | |
|---|---|---|---|---|
| Brown | $350 | 36.1 | 27.5 | $ 9625.00 |
| Rempel | $225 | 59.8 | 45.1 | $10,147.50 |
| Harper | $170 | 51.1 | 37.9 | $ 6443.00 |

Therefore, the Court will award fees and expenses as follows:

| | |
|---|---|
| Dennis Gingold | $ 32,132.75 |
| Mark Brown | $ 38,587.50 |
| Geoffrey Rempel | $ 22,494.37 |
| Lorna Babby | $ 11,857.50 |
| Keith Harper | $ 20,412.75 |

**TOTAL AWARD**  $125,484.87

A separate order shall issue this date.

### ORDER

For the reasons stated in the accompanying memorandum opinion issued this date, it is hereby ORDERED that plaintiffs' claim for fees and expenses related to the sanctionable conduct of defendants [1270] be GRANTED according to the following schedule:

| | |
|---|---|
| Dennis Gingold | $ 32,132.75 |
| Mark Brown | $ 38,587.50 |
| Geoffrey Rempel | $ 22,494.37 |
| Lorna Babby | $ 11,857.50 |
| Keith Harper | $ 20,412.75 |

**TOTAL AWARD**  $125,484.87

Defendants shall pay these amounts to plaintiffs.

SO ORDERED.